ALBERT ISHAM v. JOHN F. BRODERICK and Others.[1]

May 29, 1903.

Nos. 13,477, 13,478—(127, 128).

## Landlord and Tenant—Nuisance.

The owner's entire surrender and control of leased premises to the lessee will not relieve him from liability to third persons for the premises being, at the time of such surrender, in a condition dangerous to the public, or with a nuisance upon them; for by the act of letting he, in law, authorizes the continuance of the nuisance, and is, therefore, liable to strangers for injuries suffered therefrom. And the fact that his lessee covenants to repair furnishes him no protection, for the mere relation of lessor and lessee has no quality which enables the lessor to evade responsibility for his own acts by referring persons injured thereby to a third party for relief.

## Water upon Sidewalk.

The right to create a nuisance by means of a pipe through which water flows upon the sidewalk cannot be made a matter of grant, nor can the right be acquired by prescription. If such a pipe, by natural operation, causes and creates a nuisance, the owner of the premises must know it, or must be presumed to know it. In such cases actual notice of the existence of such a nuisance is unnecessary.

## Contributory Negligence.

On the facts in this case the question of plaintiff's contributory negligence was for the jury.

## Verdict not Excessive.

Both bones of the plaintiff's leg were fractured immediately above the ankle. He suffered considerable pain, and remained in the hospital nearly two months. His hospital bill was $150, and, in addition to this, there was a doctor's bill of $50. At the time of the trial, which was nine months after the accident, he was still lame, and obliged to wear an elastic stocking or anklet; and, according to the testimony, would be obliged to wear the same for about a year longer. He was unable to follow any active occupation for several months after the injury. *Held*, that a verdict for $1,000 did not indicate that the jurors were influenced by passion or prejudice.

[1] Reported in 95 N. W. 224.

Action in the district court for Hennepin county to recover from defendants, John F. Broderick, Ella Broderick and city of Minneapolis, $3,000 for personal injuries sustained by plaintiff as the result of a fall caused by an accumulation of ice upon a sidewalk. The case was tried before Elliott, J., and a jury, which rendered a verdict in favor of plaintiff for $1,000. From an order denying a motion for a new trial, defendants Broderick and city of Minneapolis separately appealed. Affirmed.

*Lawler & Arnold, Frank Healy* and *L. A. Dunn,* for appellants.

*T. A. Garrity,* for respondent.

COLLINS, J.

The defendants Broderick were the owners of a brick block in the city of Minneapolis, and had been such owners for many years, but at the time of the accident upon which this action was based the premises were occupied by two separate and independent tenants. The building had a flat roof, and from this roof, leading to a point a few inches from the sidewalk, was a six-inch iron pipe or conductor, put in and used for the purpose of conveying water from the roof to the ground. At the bottom of this pipe was an elbow spout, which turned toward the street, some eight or nine inches in length, and the water which made its way down through this pipe and was discharged upon the sidewalk was supposed to be carried off through a gutter-like depression in the walk, which extended to the curbing. This had been the condition of things for more than fifteen years. It was shown upon the trial that almost every winter water came down through this pipe, was discharged therefrom, and froze upon the sidewalk in a ridge some four or five inches in height at the point directly below the discharge, and decreased in height as it spread out towards the curbing. It was not a case where ice had formed upon the walk naturally, and in the manner to be expected in this climate, and really unavoidable. The attention of the city authorities had more than once been drawn to this common occurrence, but there was no testimony from which it appeared that the direct attention of the owners of the building had been called to it.

During this particular winter the water had frozen and had

formed in this uneven and dangerous manner some two or three weeks prior to the accident, which occurred one night about twelve o'clock. The plaintiff was coming out of the building, and, stepping upon this ridge near the spout of the pipe, slipped, fell, and broke his leg. He brought this action for damages, and was awarded a verdict of $1,000 against both defendants. There are two appeals; one by the Brodericks, the other by the city.

It is contended on the part of the defendant: First, that there was no evidence tending to show negligence on the part of either; second, that it clearly appears that the plaintiff was guilty of negligence which directly contributed to the accident; and, third, that the damages awarded by the jury were so excessive as to appear to have been given under the influence of passion and prejudice.

·1. The position of counsel for the defendants Broderick seems to be that, because they were not in possession of the property, and were not shown to have actual knowledge of the existence of this dangerous formation of ice, they cannot be held liable; but counsel freely admits that, if there was any testimony tending to show that the original construction and maintenance of the pipe constituted a nuisance per se, this point is not well taken. Conceding that this pipe had been constructed many years prior to the accident, and therefore had existed in its then condition for a long time, and that no previous trouble resulted, it does not follow that the pipe was not a nuisance per se, and that it had not been such for all the years it had been in that condition. It surely was a nuisance when it cast water upon the walk which froze regularly in the winter season, and rendered the walk dangerous to the public. This was not a defect in the premises which arose from the tenants' ordinary use thereof for the purposes for which they were rented, and for which the tenants were alone liable, although it may be true that the dangerous consequences might have been avoided by reasonable care upon the tenants' part; that is, the tenants might have removed the obstruction, and thus prevented the accident. The nuisance was there when the tenants took possession. It is not a case where there was a failure to prove that the owners of the premises were connected with the cause of the

injury. Nor was there a particle of testimony showing the conditions of the leases. Whether, under them, it was the duty of the tenants to make all needful repairs, and to keep the premises in proper order, inside or outside, or whether it was incumbent upon defendants Broderick so to do, was not disclosed.

Even if the control of the premises had been wholly surrendered, the law applicable to such a case is thus formulated: "Even the owner's entire surrender of control to a lessee will not relieve him from liability to third persons for the premises being at the time of such surrender, in a condition dangerous to the public, or with a nuisance upon them; for by the act of letting he, in law, authorizes the continuance of the nuisance, and is, therefore, liable to strangers for injuries suffered therefrom. And the fact that his lessee covenants to repair furnishes him no protection, for the mere relation of lessor and lessee has no quality which enables the lessor to evade responsibility for his own acts by referring persons injured thereby to a third party for relief." Shearman & R. Neg. § 709a, and citations. See also Dalay v. Savage, 145 Mass. 38, 12 N. E. 841; Owings v. Jones, 9 Md. 108; Nugent v. Boston, 80 Me. 62, 12 Atl. 797; Rankin v. Ingwersen, 49 N. J. L. 481, 10 Atl. 545.

No notice was necessary to be given the Brodericks, for this defect was a nuisance of which knowledge must be attributed to them. In speaking of just such a water pipe as this, it has been said: "The conductor, in its natural and intended use, caused ice to form upon the sidewalk, which, being dangerous to public travel, was a public nuisance. No matter how often the ice was formed, the right thus to incumber the street could not be lawful. The right to create such a nuisance was not a matter of grant, nor could it have been acquired by prescription. * * * In so far as the conductor, by its natural operation, caused the formation of such ice, it was creating a nuisance. The defendant, as owner, must have known this, or must be presumed to have known it. In such a case the reason for the requirement of a notice does not exist, and we see no reason why the rule should be applied." Leahan v. Cochran, 178 Mass. 566, 60 N. E. 382.

In Brown v. White, 202 Pa. St. 297, 51 Atl. 962—a case where

the owner of a building constructed a sink and drain pipe for the purpose of carrying waste water from rooms occupied by his tenants to an archway, with the knowledge that such water would flow thence upon the pavement—the court used the following language: "The condition of the building was, therefore, attributable to the act of the defendant, and not to that of the tenant; and its use by the latter was in conformity with the defendant's intention when he leased the premises. * * * If the premises are so constructed or in such a condition that the continuance of their use by the tenant must result in a nuisance to a third person, and a nuisance does so result, the landlord is liable." See also Kirby v. Boylston, 14 Gray, 249, and also, as bearing upon the questions now before us, City of Wabasha v. Southworth, 54 Minn. 79, 88, 55 N. W. 818.

The defendant owners, having constructed this building with a nuisance upon it, were liable to a third party who was injured by reason of such construction and maintenance.

2. The question of plaintiff's contributory negligence was for the jury. The fact that he had been at this particular place previously, that there were lights burning in the vicinity, and that he could have seen the ridge, if he had looked, would not be conclusive upon him. See Maloy v. City of St. Paul, 54 Minn. 398, 56 N. W. 94.

3. We do not think the damages were excessive. The plaintiff was compelled to remain in the hospital two months, less three days, because of these injuries. His hospital bill was $150, and, in addition to this, there was a doctor's bill of $50. Both bones of his leg were fractured immediately above the ankle, and he suffered considerable pain. Nine months after the accident, at the time of the trial, he was still lame, and obliged to wear an elastic stocking or anklet, which, according to the testimony, he would be obliged to wear for about a year longer. For several months after he was able to leave the hospital he was unable to follow any active occupation. We fail to see wherein a verdict of $1,000 in such a case indicates that the jurors were actuated by improper motives, or influenced by passion or prejudice.

Order affirmed.