B. C. BEANE, Respondent, v. CITY OF ST. JOSEPH and THE BRITTAIN INVESTMENT COMPANY, Appellants.*

In the Kansas City Court of Appeals, November 5, 1923.

1. **MUNICIPAL CORPORATIONS: Negligence: Constructive Notice: City Held to Have Had Constructive Notice of Icy Condition of Sidewalk.** In an action against a city and the owner of a building for damages for injuries received as result of a fall upon an icy sidewalk, evidence that for a period of nineteen years water from rainfall or melting snow in flowing from a roof was not confined within a downpipe, but flowed over the roof at the top of the pipe down the outside thereof so that, instead of going harmlessly into a sewer, it flowed over and across the sidewalk thereby forming an icy condition thereon whenever the temperature fell to freezing point, *held* sufficient evidence of constructive notice to city of dangerous situation complained of.

2. ———: ———: **Dangerous Obstruction: Not Vital to Question of Liability of City Whether Icy Condition of Sidewalk Was Merely Smooth or Rough from Bumps and Ridges.** In an action for damages against a city and owner of a building for injuries caused by fall on icy sidewalk *held* it was not vital to question of liability of city whether the ice was merely smooth and slippery or had accumulated into rough bumps and ridges so as to constitute an obstruction in the strict sense of that term.

3. ———: ———: **Even if Property Owner Was to Blame for Icy Condition of Sidewalk, City Was Liable for Permitting Condition to Remain.** In an action against city and property owner for injuries caused by fall upon icy sidewalk, *held*, even if the property owner was to blame for the icy condition, still if the city was liable for allowing it to remain there, it could not insist that the judgment should be against the property owner alone.

4. INSTRUCTIONS: In View of Instructions Taken as a Whole, Refusal of an Instruction Held not Reversible Error. The refusal of an instruction which sought to tell jury that the fact plaintiff was injured was not evidence of city's negligence, did not constitute reversible error, where the jury could not fail to understand from instructions as a whole that it took much more than the mere fall and injury to make a case.

5. ——: An Instruction as to Icy Sidewalk Was not Erroneous as Leaving out Element of Negligence on Part of Property Owner in Permitting Water to Flow Across Sidewalk. An instruction given on behalf of city, telling jury that they should find in favor of plaintiff and city against the property owner, if they believed the building was defective in that its guttering, drains and downspouts were in such condition that they would not carry off the water accumulated on the roof, but permitted such water to flow across the sidewalk and to freeze into ice thereon, and that said ice thereon was negligently permitted to remain on sidewalk and to freeze into rough and uneven ridges, forming a dangerous obstruction, was not erroneous as leaving out the element of negligence on part of property owner in permitting the water to run across sidewalk, where charge made by plaintiff against property owner was not that owner negligently allowed downspout to become defective whereby water escaped therefrom, but that defective construction of building and not any negligent defect allowed to arise in the downspout caused the water to be collected and thrown upon sidewalk.

*Headnote 1. Municipal Corporations, 28 Cyc, p. 1377; 2. Municipal Corporations, 28 Cyc, p. 1375; 3. Municipal Corporations, 28 Cyc, p. 1354; 4. Trial, 38 Cyc, p. 1711; 5. Trial, 38 Cyc, p. 1618.

Appeal from Circuit Court of Buchanan County.—*Hon. William H. Utz,* Judge.

Affirmed.

*William E. Stringfellow* and *Joseph M. Garvey* for respondent.

*John S. Boyer* and *Chas. H. Mayer* for appellant, Investment Co.

*Lindsey, Hess & Muster* for appellant, City.

TRIMBLE, P. J.—Plaintiff, while walking south on the sidewalk along the west side of Fifth street between Francis and Felix streets in the city of St. Joseph, Missouri, fell and broke his hip by reason of an accumulation of ice which had formed thereon at a point adjacent to premises owned by the defendant Brittain Investment Company. He brought this suit for damages against the city of St. Joseph and the said Investment Company, the adjacent property owner. The latter was made a party in obedience to the requirements of section 7954, Revised Statutes 1919, which provides that whenever the city is made liable to an action for damages by reason of the wrongful act, negligence, carelessness or unskillfulness of any person or corporation, and such person or corporation shall also be liable to an action on account thereof by the party· so injured, the latter, if he sues the city, shall also join such other person or corporation, if residing in this State, etc. In the case as originally brought, plaintiff obtained a judgment against both defendants which was appealed to this court; and on that appeal certain matters were disposed of adversely to appellant city's contention but the judgment was reversed and the cause remanded for a new trial as to both defendants. It developed in evidence on that trial that the premises of the property owner, at the time of the injury and prior thereto, had been in the possession of tenants; and there was evidence tending to show that the injury was caused by their negligence and not that of the owner. Consequently, plaintiff's instruction was erroneous as to the property owner since it did not predicate the case upon proper facts necessary to make a case against it. If the injury arose because of the wrongful act of the tenants and not the property owner, then, as the tenants had not been made parties, necessarily the judgment had to be reversed as to the city also, for, without regard to any other consideration, Section 7954 had not been obeyed, and, by virtue of its terms, no judgment against the city could be permitted to stand when

matters were in that situation. So much may be said here in further explanation and defense of our action, on the former appeal, in reversing the judgment and remanding the cause as to both defendants. The decision on the former appeal is shown in Beane v. City of St. Joseph, 211 Mo. App. 200, 240 S. W. 840.

After the reversal and remanding of the cause as above stated, plaintiff filed an amended petition and also made the tenants parties defendant along with the city and the property owner. It developed in the evidence on the second trial, however, that under the terms of the lease, the property owner continued in possession of the premises as to the outside of the building during the tenancy and had bound itself in the lease to make repairs on the outside. Hence the trial court sustained a demurrer as to the tenants; but the case was submitted to the jury as to the city and the property owner. The jury returned a verdict against both of said defendants in the sum of $2500, and both defendants have again appealed.

The amended petition on which the trial was had, after alleging that plaintiff's fall occurred on December 8, 1919, on the sidewalk at the point specified, adjacent to the premises of the defendant Investment Company, by reason of an accumulation of ice which had been permitted to form at said point, also charged that: ''the building owned by defendant, The Brittain Investment Company, . . . was defectively constructed, in that the guttering, drains or downspouts on said building were insufficient or defective, so that they would not at all times carry off all of the water which accumulated on the roof of said building, but permitted water to run from the roof of said building down the outside of a downspout on the east side thereof and run across the sidewalk adjacent to said downspout, and said defendants maintained said building in said defective condition; that water accumulated on the roof of said building because of its said defective condition was permitted to flow up-

on, along and across the said sidewalk . . . adjacent to the said premises of defendant, The Brittain Investment Company, and permitted to freeze into thick ice on said sidewalk, and said ice was negligently permitted by defendants to remain on said sidewalk and had thawed and melted and again frozen into rough and uneven ridges, forming a dangerous obstruction to persons attempting to walk along said sidewalk.''

It was further alleged that said condition of said sidewalk had existed for a long time prior to December 8, 1919, and was known to defendants, or, in the exercise of ordinary care on their part would have been known by them; that plaintiff, while in the exercise of ordinary care, unfamiliar with said sidewalk and unacquainted with the fact that ice was upon said sidewalk, was, by reason of said ice, caused to fall and thereby sustained the injuries specified.

The property owner's answer was a general denial, coupled with a plea of contributory negligence. The city's answer contained the same matters together with a further plea that if an icy condition existed on the sidewalk at the time and place of the alleged injury, then it was caused by the wrongful act, negligence, etc., of its codefendant.

The evidence is that at a distance variously estimated from twelve to twenty feet from the point on the sidewalk where plaintiff fell and received his injury a downspout on the building owned by the Brittain Investment Company led from the roof thereof to the ground and was the means afforded for carrying the water from the roof of said building. This downspout continued on into the ground and ran underneath the surface thereof to and beneath the sidewalk and emptied into the city storm sewer. There is no dispute over the foregoing facts relating to the downspout and its connection with the sewer.

There was substantial evidence in plaintiff's behalf that, for a period of nineteen years, water from rainfall

or melting snow, in flowing from said roof, was not confined within said downpipe but flowed over the roof at the top of the pipe down the *outside* thereof, so that, instead of going harmlessly into the sewer, as it would have done had it flowed through the pipe, it came down the outside thereof and flowed over the surface of the ground in a somewhat diagonal direction to and across the sidewalk, thereby forming on said walk at the point in question a stream of water across the sidewalk and spreading out like a fan. The result was that whenever there was rainfall followed by freezing weather, or water running from melting snow on the roof during which freezing temperature occurred, an icy condition was created on the sidewalk at that particular point. During these times when water was thus flowing from the building across the sidewalk, it was manifest to the most ordinary mind that the moment the temperature fell to the freezing point, an icy condition would be created on the sidewalk at that point. Even when, owing to the warmth of the sun's rays on the roof of the building, the snow thereon would be melting and water would be running down the outside of the pipe and from there to and across the sidewalk, still, if the walk happened to be in the shade, the water would freeze there and would do so at night when the warmth of the sun had been withdrawn. This condition in winter time readily disclosed a situation which would inevitably become dangerous to pedestrians on the sidewalk the moment the temperature became such as to transform the water on the sidewalk into ice. For this reason there is no merit in the city's contention that it was without constructive notice. This contention is based on the theory that the *particular* ice on which plaintiff fell froze there only the night before and since plaintiff's fall occurred about one or two o'clock in the afternoon, the city had only a half day's time in which to receive constructive notice. This treats the matter as if the water came there unexpectedly and for the first time, whereas the evidence is that whenever

there was rainfall or snow on the roof the water therefrom flowed across the sidewalk, which water in winter time alternately froze and thawed, creating the condition complained of and that too at a point on a sidewalk which is manifestly in the business part of the city. However, there is ample evidence in the case from which the jury could find that ice originating from water coming from the roof down the outside of the pipe had, for several days prior to the injury, existed at the point in question and that such ice extended from the pipe over the surface of the ground to and across the sidewalk and was the ice on which plaintiff fell. The dangerous situation complained of did not arise from an icy condition all over the city, but grew out of a situation existing for many years at a particular point on the sidewalk, and which the city had ample time to remedy; and even the particular ice on which plaintiff fell could have been removed in a very short time. In a somewhat similar case, our Supreme Court held that a period of twenty-four hours was sufficient to give the city constructive notice. [Reedy v. St. Louis Brewing Ass'n., 161 Mo. 523, 541.]

For the same reason, it is not vital to the question of liability of the city whether the ice was merely smooth and slippery or had accumulated into rough bumps and ridges so as to constitute an *obstruction* in the strict sense of that term. [Reedy v. St. Louis Brewing Ass'n., 161 Mo. 523, 538; Livingston v. St. Joseph, 174 Mo. App. 636.] However, again there is evidence tending to show that the ice was rough, uneven and bumpy so as to constitute an obstruction on the sidewalk. Hence there can arise no contention that as petition alleged that specific condition the plaintiff failed to prove the case as laid.

The contention of the city that its instruction that no verdict against the city alone could be returned should have been given, overlooks the fact that there was evidence in the case from which the jury might have found that the icy condition was there for which the city would

be liable and yet was not produced by anyone from whom the city could demand redress. While plaintiff, in obedience to the statute made the property owner a party, and alleged that it caused the dangerous situation and the evidence in support of plaintiff's case tended to show that state of facts, yet, having pleaded a case which would render the city alone liable if the evidence should show that it alone was to blame, it was entitled to recover in accordance with the liability disclosed by the facts. The city had full opportunity to present, and did present, to the jury in its instructions, its contention under which it claimed that the property owner was alone to blame and not it. And there was evidence from which the jury could have found that the city alone was liable. Hence we see no reversible error in refusing to instruct the jury that no verdict could be returned against the city or that none could be returned against the city alone. Even if the property owner was to blame for the icy condition being there, still if the city was liable for allowing it to remain there, it could not insist that the judgment should be against the property owner alone. Section 7954, Revised Statutes 1919, provides a different way to protect the city.

The foregoing answers the objections made by the city except as to the refusal of its instruction 6-9 which sought to tell the jury that the fact plaintiff was injured is not evidence of the city's negligence. The court refused it ''on account of practical duplication.'' While the instruction was not improper and might have been given, yet, in view of the instructions taken as a whole, its refusal did not constitute reversible error. The jury could not fail to understand from them that it took much more than the mere fall and injury to make a case.

The defendant Brittain Investment Company in its appeal makes no complaint against anything done by plaintiff in the case but directs its objections solely to two instructions given by the court in behalf of the defendant city.

215 Mo. App.—36.

In the first of these the city had the court tell the jury that they would find in favor of plaintiff and the city against the Investment Company if they believed from the evidence that said company owned the building, and that said building was defective in that its guttering, drains and downspouts were insufficient or defective so that they would not carry off the water accumulated on the roof thereof but permitted the water so accumulated on the roof of said building because of its defective condition to flow across the sidewalk and to freeze into ice thereon, and that said ice, if any, was negligently permitted to remain on said sidewalk and to freeze into rough and uneven ridges, forming a dangerous obstruction thereon, and that plaintiff on the 8th of December, 1919, was walking thereon while in the exercise of ordinary care, and fell on said ice and was injured.

The appellant property owner contends that this instruction is erroneous in that it leaves out the element of negligence on the part of the property owner in permitting the water to run across the sidewalk. In support of such contention, said property owner cites McCord Rubber Co. v. St. Joseph Water Co., 181 Mo. 678, 693-4; Bell v. Alzey Realty Company, 163 Mo. App. 361; Schindler v. Standard Oil Co., 207 Mo. App. 190; Carvin v. City of St. Louis, 151 Mo. 334; Kirkpatrick v. Knapp & Co., 28 Mo. App. 427. We think this misconceives the case as made by the plaintiff's pleadings and evidence and it is upon these that the judgment rests. As we construe the charge made by the plaintiff against the property owner, it is, not the said owner *negligently* allowed the downspout to *become* defective whereby water escaped therefrom on to the sidewalk, but that in the construction of the building, the water coming therefrom was not taken care of but was allowed to accumulate and flow in a stream to the ground and thence across the sidewalk, creating a dangerous situation there. In other words, it was the defective *construction of the building,* and not any negligent defect allowed to arise in

the *pipe,* that caused the water to be collected and thrown upon the sidewalk. The evidence does not disclose anywhere that the water came from any defect in the pipe. On the contrary what evidence there is as to the condition of the pipe tends to show that the pipe itself was sound and had no holes in it and there is no evidence that it was stopped up and had *become* insufficient to carry the water off on that account. There is evidence, however, from which the jury could find that the *building* was so constructed as to allow the water to flow on the outside to the ground where it would then run to and across the sidewalk; and that it did this regularly and persistently year after year. One witness testified that at the south end of the roof there was a backing or an extension the purpose of which was to prevent water flowing off the roof upon the property south of the building; but nothing prevented the water from flowing from the roof to the ground at the corner where the pipe was and thence to the sidewalk which it did habitually year after year. It appears to be conceded that if the structure was such as to conduct the water down an *open* downspout so as to allow it all to flow out upon the ground and across the sidewalk, the same could be declared a nuisance as a matter of law. It would seem that if the building was so constructed as to permit any portion of the water to flow unconfinedly to the ground and escape thereover to the sidewalk, the wrong done would be the same in character and principle though perhaps not to the same extent or degree. In both instances it would be a nuisance created by the manner in which the building was constructed and maintained.

The other instruction given in behalf of the city, of which the defendant property owner complains, is one which manifestly is concerned only with what the jury must find before a verdict could be returned against the city and it told the jury that unless it found such facts it should return a verdict in favor of the city. It nowhere gives any room for the idea that a judgment could

be rendered against the property owner regardless of whether the water came from its building or not. In the property owner's instructions the jury were told of the Company's defense and what the jury must find before a verdict could be rendered against it; and there is nothing in the city's instruction which could be understood by the jury as eliminating any of the defenses of the property owner.

The judgment is affirmed. All concur.