RUDY SCOTT AND ANOTHER v. VILLAGE OF OLIVIA AND ANOTHER.

110 N. W. (2d) 21.

June 23, 1961—No. 38,132.

*Hvass, Weisman & King* and *James L. Aitchison,* for appellants.
*Davis & Gustafson,* for respondent village.
*Robb, Robb & Van Eps,* for respondent Brakemeier.

MURPHY, JUSTICE.

This is an action for damages by the plaintiffs, husband and wife, for injuries to the wife received in a fall on a public sidewalk in front of a bowling alley operated by defendant Paul Brakemeier, doing business as Shorty's Bowl, in Olivia, Minnesota. At the close of plaintiffs' testimony the court directed a verdict for both defendants, Brakemeier and the village of Olivia. Plaintiffs moved that the court set aside the directed verdict and grant a new trial. This appeal is from an order denying that motion.

The building housing the bowling alley is located within the village limits of Olivia. The building was originally a garage. It was occupied by defendant Brakemeier under a lease for a 5-year period with an option for a 5-year renewal, under which lease he paid rent for use of the premises during the bowling season. The lessors retained an apartment located in the southeast corner of the building. The entrance to the bowling alley is in the middle of the east side of the building. At the northeast corner is a downspout which drains water from a

rain gutter running along the north edge of the building. This down-spout discharges water along the ground at the northeast corner of the building a few feet from the sidewalk. From that point there is a slight downgrade in an easterly direction which carries the water onto the sidewalk where, according to the record, it accumulates and freezes.

It appears from the record that the plaintiff wife, accompanied by four other women, drove to the bowling alley on the night of January 29, 1959, arriving there at approximately 6:45, and parked in front and close to the northeast corner of the building. She got out of the car, walked across the boulevard, stepped on the sidewalk, and fell as a result of slipping on a large patch of ice, which was described by one witness as "wavy, like it had melted and more was frozen, and it wasn't smooth at all" and by another as "quite ridgy" and "quite rough."

An employee of defendant Brakemeier, one Otto Strey, who had knowledge of the accumulation of ice created by the water discharged from the downspout, testified that on the day of the accident he attempted to remove the ice from the sidewalk. He used a scoop in an attempt to remove the water and a hammer in an attempt to chip the ice and thus clear the sidewalk. He testified that he "had it pretty well clearned [sic] off, but it was still coming over there, and it froze too." This was about 4 p.m. He noticed the water coming down from the eaves spout onto the sidewalk. He did not sand the walk. The testimony of Mrs. Gladys Wetzel, who lived next door to the bowling alley, is also significant. She testified that the flow of water from the downspout onto the sidewalk causing icy conditions in cold weather had continued over a period of 13 years and possibly longer. She testified that during periods of thawing there was always ice on the sidewalk on both sides of the property line at the northeast corner of the bowling alley. She testified that she sanded the sidewalk on her property where there was ice.

At the close of the evidence the court granted a directed verdict for the city on the ground that the ice on the sidewalk had not existed for a sufficient length of time to give the city constructive notice of the condition and that there was no actual notice. The court granted the motion of defendant Brakemeier on the ground that there was no

showing that the condition complained of was created or aggravated by any conduct on his part. The plaintiffs claim that the court was in error in directing a verdict for each defendant.

■ Since it is asserted that the court erred in directing verdicts, it is necessary for us to keep in mind that a motion for a directed verdict accepts the view of the evidence most favorable to the adverse party and admits the credibility, except in extreme cases, of the evidence in favor of that party and all reasonable inferences to be drawn therefrom. A directed verdict should be granted only in those unequivocal cases where in the light of the evidence as a whole it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where it would be contrary to the law applicable to the case. Erickson v. Strickler, 252 Minn. 351, 90 N. W. (2d) 232; Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649.

■ We have recently had occasion to review the authorities relating to the liability of a municipality with reference to the maintenance and care of sidewalks and other public ways in Bury v. City of Minneapolis, 258 Minn. 49, 102 N. W. (2d) 706, where we noted that a municipal corporation owes a duty to the public to exercise reasonable care in the maintenance of sidewalks and other public ways in a safe condition for the passage of pedestrians and that this duty extends to the elimination of dangerous conditions caused by accumulations of ice and snow.

■ It is also well settled that, regardless of the nature of the accumulations of ice and snow, to assess liability against a municipality it must appear that it had actual or constructive notice that the accumulations complained of existed for a sufficient length of time before the accident to allow a reasonable opportunity to remedy the condition.

■ With these preliminary observations, plaintiffs' arguments as to the liability of the city under the circumstances may be considered. To begin with, it must be conceded that the downspout which discharged water a few feet from the sidewalk created an artificial condition which caused water to gather and freeze on the sidewalk in winter weather. It appears that the authorities are pretty generally in agreement that where an artificial condition is created by a leader

constructed from the eaves trough of an adjoining building in such a way as to cast water upon a sidewalk, the municipality is liable for injury caused by ice resulting from the freezing of such water, provided, of course, that the city has knowledge of the condition or it has existed for a sufficient length of time so that the city should have known of it and failed to take steps to remedy it.[1] We held the city and the owner of a building liable to an injured person who slipped and fell upon an accumulation of ice under almost the same circumstances in Isham v. Broderick, 89 Minn. 397, 95 N. W. 224. The owner was held to be liable because of the artificial condition caused by the downspout discharging water upon the sidewalk. It was there said (89 Minn. 399, 95 N. W. 225):

"* * * It surely was a nuisance when it cast water upon the walk which froze regularly in the winter season, and rendered the walk dangerous to the public."

The argument borrowed by defendant village from Mesberg v. City of Duluth, 191 Minn. 393, 254 N. W. 597, to the effect that the particular patch of ice on which the plaintiff fell did not exist a sufficient length of time to charge the municipality with notice has no application under circumstances where year after year water is artificially discharged upon a sidewalk and forms ice whenever the temperature is sufficiently low. Under the circumstances it is not a valid defense to say that the particular patch on which the plaintiff fell existed only for a short time. The fatal weakness with this argument is, as was said in Beane v. City of St. Joseph, 215 Mo. App. 554, 559, 256 S. W. 1093, 1095, that it "treats the matter as if the water came there unexpectedly and for the first time, whereas the evidence is that whenever there was rainfall or snow on the roof the water therefrom flowed across the sidewalk, which water in winter time alternately froze and thawed, creating the condition complained of * * *." The same point is discussed in Reedy v. City of Pittsburgh, 363 Pa. 365, 69 A. (2d) 93, where the plaintiff sustained injuries by falling on an icy sidewalk. There, as here, the ice was caused by freezing of water allowed to

---

[1]Annotation, 39 A. L. R. (2d) 802.

flow over the surface of the sidewalk from a downspout intended to carry off water collected from the roof of the building. The icy condition had existed during freezing weather for 4 years prior to the accident. The Pennsylvania Supreme Court said (363 Pa. 367, 69 A. [2d] 94):

"* * * But, having offered ample evidence to support the finding of a nuisance of long standing and negligence in not causing it to be abated, it was not necessary to show how long the particular bit of ice had remained on the sidewalk before it threw the plaintiff; it was sufficient to show the conditions, and the city's knowledge of them, which in freezing weather, would make the condition of the sidewalk dangerous to a pedestrian lawfully using it; the evidence was sufficient to go to the jury on that point."

■ That court also observed, as we did in Randall v. Village of Excelsior, 258 Minn. 81, 103 N. W. (2d) 131, that nuisance may presuppose negligence and does so when the omission to remove the nuisance after notice constitutes negligence. As we indicated in the Randall case, the label of the fault which imposes liability is not important under such circumstances. We also said there that where the acts or omissions constituting negligence are the identical acts which it is asserted give rise to a cause of action for nuisance, rules applicable to negligence will be applied. We are accordingly of the view that on the state of the record at the close of the plaintiffs' case there was evidence from which the jury might find that the city failed in its duty to abate a nuisance created by the property owner which resulted in a long-standing artificial condition on a public sidewalk which exposed those lawfully upon the sidewalk to injury in seasons when water alternately thawed and froze. Recurrence of the condition at the same place winter after winter for at least 13 years would constitute constructive notice to the city.

■ The plaintiffs also contend that the court erred in dismissing the cause of action as to the tenant. In Fortmeyer v. National Biscuit Co. 116 Minn. 158, 160, 133 N. W. 461, 37 L.R.A. (N.S.) 569, in discussing liability growing out of a defect in a sidewalk, we observed that there may be joint and several liability on the part of the munici-

pality, the owner of the property, and his tenant. We said that the municipality might be liable where it authorized "the unsafe condition of the sidewalk and negligently permitted such condition to continue"; the owner of the premises might be liable where it "created the unsafe condition, or nuisance, in the public street to be utilized in connection with the premises"; and the lessee might be liable under circumstances where it maintained the condition created by the landlord and was "a continuer of the nuisance." The liability of the landlord is not in issue here as it was in Isham v. Broderick, 89 Minn. 397, 95 N. W. 224. It appears that the plaintiffs had mistakenly assumed that the defendant tenant was the owner of the real estate and did not learn that he was a tenant until the trial was half over. Our authorities relating to the standard of care required of the defendant tenant as bearing upon his duty to maintain walks abutting the leased premises are not particularly helpful.[2] There appears to be authority for the proposition that, where a tenant has himself created the dangerous condition or is in exclusive control of the entire premises upon which the condition exists, liability may attach.[3] There is also authority to the effect that the landlord and not the tenant may be held liable where both are in partial possession and the landlord retains control of that portion of the premises upon which the nuisance exists or which creates the dangerous condition.[4] Because of the peculiar circumstances of this case, neither of these general rules controls. We do not understand that the authorities hold, as an absolute rule, that the mere fact that the landlord remains in possession of a part of the premises absolves the tenant of liability under all circumstances. Under the fact situation in this case the jury could find that, although the landlord retained possession of part of the premises, the tenant was in possession of and controlled that portion of the building which was the cause of the dangerous condition. Control is the determining factor, and

[2]Noetzelman v. Webb, 204 Minn. 26, 283 N. W. 481; Bentson v. Berde's Food Center, Inc. 231 Minn. 451, 44 N. W. (2d) 481, 22 A. L. R. (2d) 733; Rudd v. Lyceum Dramatic Productions, Inc. 250 Minn. 328, 85 N. W. (2d) 61.

[3]Annotation, 22 A. L. R. (2d) 738.

[4]Annotation, 22 A. L. R. (2d) 744.

liability must rest upon the extent and degree of control demonstrated by possession of the particular part of the premises, the terms of the lease, and other surrounding facts and circumstances. While it may not be fairly said that under all circumstances a tenant would be obligated to make extensive changes in the basic structure of the building in order to eliminate a nuisance created by the landlord, it is quite another thing to say that a tenant has no duty whatever, in the face of a foreseeable injury, where the dangerous condition is one which might be eliminated by the simple expedient of a minor alteration. By virtue of his possession and control of the premises, including that part on which the nuisance is maintained, it may be said that the tenant is under a duty to maintain the premises with sufficient care so that the public using the sidewalk will not be exposed to danger reasonably foreseeable because of the artificial condition created by the nuisance. The leader and downspout on the building in this case were instrumentalities common to and for the benefit of the entire premises, and it may be assumed that the defendant tenant under the terms of the lease hereinafter referred to shared with the owner the obligation to protect the public from consequent damage within the range of foreseeability.

We are of the view that under the evidence submitted in this case, tenuous though it may be, where the owner has created a nuisance on the premises and the tenant has thereafter knowingly participated in continuing or maintaining the nuisance, recovery because of such wrongful conduct against either or both should not be defeated. The jury might find that the tenant as well as the owner could readily have taken measures to prevent the downspout from creating a hazard to pedestrians. The jury could also find under the circumstances that the degree and extent of the tenant's control over the premises imposed upon him a duty to exercise a proper degree of care to prevent the condition from becoming dangerous to the traveling public.[5]

---

[5]In considering the defendant tenant's duty Restatement, Torts, § 364, states:

"A possessor of land is subject to liability for bodily harm caused to others outside the land by a structure or other artificial condition thereon,

Upon the record in this case it appears that when the defendant tenant took occupancy he did so with the knowledge of the existing hazards created by that part of the building which he occupied, and in so doing it may be assumed that if he did not become the exclusive possessor of the premises he at least shared with the landlord the management and control of it. Under the evidence the jury might have found that there devolved upon the tenant the duty to exercise that degree of care required to protect travelers on the abutting sidewalk from dangers incident to artificial accumulations of ice on the sidewalk in front of the building. This should be particularly true where the foreseeability of injury might be obvious to the tenant.[6]

Under the terms of the lease the tenant took the property "without any liability or obligation on the part of said Lessor of making any alterations, improvements or repairs of any kind on or about said premises" for the term of the lease. Accordingly, there were no provisions in the lease which would prevent the tenant from remedying the dangerous condition. Moreover, it is apparent from the terms of the lease that, as between the parties at least, the landlord was relieved of the obligation of making repairs and alterations. The jury could

---

which the possessor realizes or should realize as involving an unreasonable risk of such harm, if

\* \* \* \* \*

"(d) the possessor when he takes possession knows or should know of the condition which was created before he took possession."
Restatement, Torts, § 350, recites:

"A possessor of land over which there is a public highway is subject to liability for bodily harm caused to travelers thereon by a failure to exercise reasonable care to maintain in reasonably safe condition any structure or other artificial condition created in the highway by him or for his sole benefit subsequent to its dedication."

The "artificial condition" referred to in the statement may include (*comment f*) "snow precipitated from the sloping roof of the possessor's house or water discharged from its eaves by standpipes and subsequently freezing into ice."

[6]Krug v. Wanner, 28 N. J. 174, 145 A. (2d) 612; Restatement, Torts, §§ 350, 364; Bixby v. Thurber, 80 N. H. 411, 118 A. 99, 29 A. L. R. 175; Cerchione v. Hunnewell, 215 Mass. 588, 102 N. E. 908, 50 L.R.A. (N.S.) 300; Atwill v. Blatz, 118 Wis. 226, 95 N. W. 99, 14 Am. Neg. Rep. 242.

further take into consideration the fact that under the terms of the lease the tenant agreed to keep the sidewalks in front of the premises cleared of ice and snow "if such clearing shall be ordered or required by municipal authority." While it is unnecessary for us to discuss the effect of the last stated qualification, it is apparent that the defendant tenant understood that the landlord intended to absolve himself from the responsibility of complying with public requirements relating to the maintenance of the sidewalk in winter weather. It does not appear from the record that the city ever required the tenant to take any action with reference to maintaining the sidewalk, nor have we been cited to any local ordinance governing that subject. It may be fairly concluded that as a result of this particular provision there fell to the tenant the duty to comply with whatever conditions the municipality imposed upon property owners with reference to the subject of keeping sidewalks free and clear from ice and snow. It appears that the defendant tenant did assume that duty and made an ineffectual attempt, if the plaintiffs' evidence is to be believed, to neutralize the hazard. Accordingly, there was a question of fact for the jury to pass upon on the issue of the defendant tenant's negligence in failing to abate or otherwise remove an artificial hazard which allegedly gave rise to the plaintiffs' cause of action.

Reversed.

MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.