**Patrick BENSON, Respondent,**

v.

**George N. ROSTAD, Appellant.**

**No. C7–85–1617.**

Court of Appeals of Minnesota.

March 18, 1986.

Patrick J. Costello, Costello & Feehan, P.A., Red Wing, for respondent.

Lee L. Fossum, Lampe, Fossum & Crow, Northfield, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ., without oral argument.

## OPINION

POPOVICH, Chief Judge.

This appeal involves an oral contract for custom-farming. A jury found appellant George N. Rostad guilty of fraud and misrepresentation. He appeals from an order denying his motion for a judgment notwithstanding the verdict, or alternatively for a new trial. Appellant contends (1) the jury verdict finding him guilty of fraud and misrepresentation is not supported by the evidence, (2) the trial court erred in denying his motion for a directed verdict, (3) the jury's verdict was a product of bias and misconduct, and (4) the jury did not consider evidence of intervening causes for respondent's loss. We affirm.

## FACTS

Respondent Patrick Benson sued appellant George Rostad for fraud and misrepresentation resulting from a farm lease agreement. He charged that Rostad's late spring soil preparation resulted in a poor quality, low yield corn crop for 1982, and a subsequent loss in excess of $50,000.

In the spring of 1982, Rostad, a long-time farmer in Goodhue County, Minnesota, leased about 450 acres of farmland to Patrick Benson, who also farms in the area. Benson farms approximately 120 acres of his own land. Rostad farmed about 800 acres in 1982. Benson was raised on a farm and has been farming on his own since 1972. Rostad testified he has been farming for about 40 years.

Benson contacted Rostad after a friend told him of Rostad's newspaper ad offering the land for rent. The parties met on several occasions to discuss the rental and eventually entered into a lease agreement on April 10, 1982, which provided for rental at $100 per acre. The lease contained no reference to equipment rental or other farming services such as field preparation, which is the focus of this appeal.

Benson claimed that he and Rostad entered into a verbal agreement whereby Rostad promised to complete preparatory field work in a time and manner which would give Benson the best chance for maximum corn crop yield. He claims Rostad was slow in preparing his fields which resulted in late plantings, poor maturity and a subsequent low quality corn crop. Benson further incurred additional expenses for drying the corn after a late harvest.

Rostad denies making any representations to Benson regarding time of field preparation or possible yield because of the uncertainty of the weather and other factors. Benson and Rostad both testified that they understood Rostad would perform custom farm work[1] for Benson on the rental property, and that Rostad said, "I have enough iron to keep us both going" (iron meaning machinery). Although Benson did not know what kind or how much equipment Rostad owned, he admitted at trial that the equipment Rostad had was consistent with what he understood it to be.

Benson testified he finished planting corn on his own 120 acres on May 7 and on May 8 informed Rostad he was ready to begin planting the rented land. He said Rostad told him he had just started his own and wanted to "get himself going." Although Benson did not immediately complain to Rostad about the arrangement, Benson said he contacted Rostad several times between May 8 and May 21, the date he finally started planting on the leased land. He said that rain hindered the field work in late May and planting was not finished until June 6.

Both parties testified that Rostad did not promise to till and prepare the land by a certain date or that Benson would get a crop. Rostad said Benson did not even ask

---

1. Custom farming is a term used to describe a practice whereby a farmer hires another individual to prepare or plant a field or a similar task. In this case the term means Rostad would prepare the fields for planting and apply nitrogen and herbicide.

for such guarantees. However, Rostad knew what corn varieties Benson was going to plant and the date of planting for optimum yield because Benson took over Rostad's seed order. Benson testified the agreement was that Rostad had enough equipment to prepare both farmer's fields simultaneously.

Douglas Ryan, Benson's neighbor, also testified on his behalf. He said that spring and summer of 1982 were rainy and that if corn was planted late the crops were poor because they did not mature.

Ryan testified he was planting corn on June 6, 1982 on land next to Benson's rented land. He said his yield was reduced because of the late planting and poor weather. Ryan planted 95-day maturity variety of corn in his fields on June 6, while Benson, who voluntarily took over Rostad's seed order, planted both 95-day and 105-day maturity corn. However, Benson testified there was little discernible difference in the yields between the two varieties.

Rostad counterclaimed against Benson for $5250 for materials and services, including corn drying and tractor rental and $1770.63 for trucking services.

At the close of respondent's case, appellant moved for a directed verdict on the ground Benson did not show that Rostad *knowingly* made any false representation, one of the elements of misrepresentation. The trial court denied this motion. At the close of trial, appellant's counsel again moved for a directed verdict which was denied.

The jury returned a verdict in favor of Benson finding that Rostad made a misrepresentation to Patrick Benson, with damages of $37,750. It also found that Benson owed Rostad $6150 for equipment rental and other services rendered. The court offset the amount Benson owed Rostad and entered a $31,600 judgment for Benson. Appellant then moved for judgment notwithstanding the verdict, or alternatively for a new trial.

Following entry of the judgment, there was an allegation of jury misconduct. The trial court held a *Schwartz* hearing where an alternate juror testified about a conversation she overheard. The alternate testified that on the last day of trial, but before the trial had ended, two jurors were discussing issues relating to the trial. She said the two jurors stated Rostad should have been there the day Benson wanted to plant and he should not have removed hay from the fields. She said they also discussed Benson's attorney, Patrick Costello, and Rostad's attorney, Lee Fossum. The alternate juror testified the two said Costello was "the best thing that happened to Red Wing" and were speculating about where Fossum was from. She testified one of the jurors responded, "Probably Kenyon or some small town like that." At the time the conversation took place, two jurors were not in the room, and only two jurors participated in the conversation.

Following the *Schwartz* hearing, the trial court refused to grant a new trial based on jury misconduct. The trial court found that although the *Schwartz* hearing disclosed improper conduct by some of the jurors, it was not enough to prejudice Rostad and justify a new trial.

### ISSUES

1. Whether there is sufficient evidence to support the jury's verdict finding Rostad guilty of misrepresentation?

2. Whether the trial court erred in denying appellant's motion for a directed verdict?

3. Whether the jury's verdict was a product of bias and misconduct?

4. Whether the jury was required to consider evidence of intervening causes for respondent's loss?

### ANALYSIS

1. Appellant contends the trial court should have granted judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial because the verdict is not supported by the evidence. *See* Minn.R. Civ.P. 59.01(7). He claims the verdict can-

not stand because respondent did not prove the misrepresentation was intentional.

■ The standard in determining the propriety of granting a motion for JNOV is whether any competent evidence exists which reasonably tends to support the verdict. *Newmaster v. Mahmood,* 361 N.W.2d 130, 133 (Minn.Ct.App.1985) (citation omitted). Such a motion admits every inference that can be reasonably drawn from the evidence and the credibility of adverse testimony. *Imdieke v. Blenda-Life Inc.,* 363 N.W.2d 121, 124 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Apr. 26, 1985).

Whether to grant a new trial rests solely in the discretion of the trial court and will be reversed on appeal only for clear abuse of that discretion. *City of Ogema v. Bevins,* 341 N.W.2d 298, 299 (Minn.Ct.App. 1983).

The test for granting a new trial is:

A new trial should not be granted unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment.

*LaValle v. Aqualand Pool Co., Inc.,* 257 N.W.2d 324, 328 (Minn.1977). In reviewing a jury verdict on appeal, the court must consider the evidence in a light most favorable to the prevailing party and must sustain the verdict unless it is manifestly contrary to the evidence. *Cobb v. Aetna Life Insurance Co.,* 274 N.W.2d 911, 917 (Minn. 1979).

The elements of fraud in Minnesota are well settled:

1. There must be a representation;

2. That representation must be false;

3. It must have to do with a past or present fact;

4. That fact must be material;

5. It must be susceptible of knowledge;

6. The represener must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

7. The represener must intend to have the other person induced to act, or justified in acting upon it;

8. That person must be so induced to act or so justified in acting;

9. That person's action must be in reliance upon the representation;

10. That person must suffer damage;

11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re-Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967).

Further, the supreme court has held that for a misrepresentation to amount to fraud, there must be some affirmative evidence that the promisor did not intend to perform at the time he or she made the promise. *Vandeputte v. Soderholm,* 298 Minn. 505, 508, 216 N.W.2d 144, 147 (1974) (citations omitted).

Respondent claims appellant had no intention of carrying through on the parties' verbal agreement to prepare the fields for optimum crop yield. Although appellant denies ever making any such representations, respondent testified he never would have entered into the lease agreement without some understanding. If Rostad intended to lead Benson to believe he could custom farm the leased property when in fact he could not, then such a misrepresentation could lead to fraud. *Belisle v. Southdale Realty Co.,* 283 Minn. 537, 540, 168 N.W.2d 361, 363–64 (1969) (per curiam). All of the witnesses at trial, including appellant Rostad and respondent Benson, testified that from mid-May through early June the weather was extremely rainy and the soil was not in good planting condition. However, there was also testimony that during early May, when Rostad was preparing his own land, the weather was dry and sunny.

■ Even if the jury determined that Rostad made promises to Benson concern-

ing scheduling, there must be some showing he did not intend to fulfill the promise when he made it. A subsequent intention to break the promise or failure to fulfill it does not constitute fraud. *See Wojtkowski v. Peterson,* 234 Minn. 63, 69, 47 N.W.2d 455, 458 (1951). Thus, even if Rostad later decided not to follow through on his promise, it would not be enough to support a verdict for fraud and misrepresentation. However, an actual intent to deceive is not necessary. *Swanson v. Domning,* 251 Minn. 110, 86 N.W.2d 716 (1957).

> Fraudulent intent may be proved by showing that the party knew his statements to be false; or that, having no knowledge of their truth or falsity, he did not believe them to be true; or that, having no knowledge of their truth or falsity, he represented them to be true of his own knowledge.

*Id.* at 115, 86 N.W.2d at 720 (footnote omitted).

The surrounding facts and circumstances could lead a jury to conclude (1) Rostad did not believe he could prepare both parties' fields simultaneously *or* (2) Rostad did not know whether he could prepare both parties' fields but said he could anyway.

Respondent testified Rostad assured him the leased land would be tilled and prepared for corn planting at the same time as appellant's own land. Appellant knew Benson would be planting corn and also what varieties. He knew optimum planting times. Appellant also knew he had 800 acres of his own to prepare and plant, as well as the 445 acres rented to Benson.

 Whether Benson's testimony that Rostad promised to prepare Benson's fields concurrently with his own, while knowing he could not do it or unsure if he could, should be believed is a credibility determination. Credibility determinations are for the finder of fact and should not be disturbed on appeal. *DeMars v. State,* 352 N.W.2d 13, 16 (Minn.1984). The trial court does not have discretion to grant a new trial merely because it would have reached a conclusion different from that of the jury. *City of Ogema v. Bevins,* 341

N.W.2d at 299. The jury listened to the parties' testimony and observed their demeanor at trial. The jury believed Benson. We cannot say they were wrong.

2. A request for a directed verdict presents a question of law regarding the sufficiency of the evidence to sustain a verdict for the opposing party. *See* Minn. R.Civ.P. 50.01.

 A directed verdict should be granted only in cases where (1) when considering the evidence as a whole, it would be the duty of the trial court to set aside a contrary verdict as manifestly against the evidence, *or* (2) where it would be contrary to the applicable law. *Scott v. Village of Olivia,* 260 Minn. 346,.350, 110 N.W.2d 21, 25 (1961). Although a motion for directed verdict admits the credibility of the evidence for the adverse party and all inferences which may be drawn from the evidence, "Nevertheless, ' * * * a court should direct a verdict in favor of the party in whose favor the evidence overwhelmingly preponderates even though there is some evidence in favor of the adverse party. Not every conflict in the evidence gives rise to a jury question.' " *Zinnel v. Berghuis Construction Co.,* 274 N.W.2d 495, 498 (Minn.1979) (quoting *J.N. Sullivan & Assoc. v. F.D. Chapman Construction Co.,* 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975)).

The trial court did not err in refusing to direct a verdict in favor of Rostad.

3. Appellant also argues that the jury's verdict was a product of bias and jury misconduct. Following the jury's verdict, the alternate juror contacted Rostad and told him some jurors had been discussing the case before the trial's conclusion. She told him that one person, who later served as jury foreperson, indicated a bias in favor of plaintiff's attorney.

At Rostad's request, the court scheduled a *Schwartz* hearing, pursuant to *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 104 N.W.2d 301 (1960); *see Stayberg v. Henderson,* 277 Minn. 16, 151 N.W.2d 290 (1967) (party requesting a new

trial for jury misconduct should have an opportunity to be heard).

 The alternate juror testified at the hearing. No other evidence was presented. The trial court eventually held the actions of the jurors did not constitute misconduct which would justify a new trial. In the memorandum accompanying the July 19 order, the trial court stated that to justify a new trial based on jury misconduct, there must be prejudice to the moving party, as well as juror misconduct. Whether to grant a new trial for jury misconduct rests almost entirely within the discretion of the trial court and its decision will not be reversed on appeal, except for a clear abuse of that discretion. *Stayberg v. Henderson*, 277 Minn. at 21, 151 N.W.2d at 293. The trial judge here followed the supreme court's directive in *Schwartz* and its progeny by holding a hearing. The court held the hearing did disclose improper conduct by some jurors but that conduct did not prejudice the moving party. We agree with the trial court.

4. Appellant contends the jury failed to consider evidence presented at trial of intervening causes for respondent's loss. The trial court's instructions to the jury were:

> In order to find a misrepresentation under the law, you must find that each of the five following elements exist: First, did George Rostad promise to do Patrick Benson's field work to be accomplished in a timely and expedient manner to allow Mr. Benson to plant his corn crop at that time, in the Spring of '82, that would provide Mr. Benson with the best possible chance of obtaining maximum crop production? Second, that George Rostad did not prepare the farm land for planting as he promised. Third, that at the time George Rostad made the promise, he had no intention of performing it. Fourth, that Patrick Benson relied on Mr. Rostad's promise and was deceived by it, and five, that Patrick Benson acted with ordinary care in relying on that promise.

Based on these instructions, the jurors were not required to consider the weather, corn type and other intervening factors as an element of misrepresentation. Therefore, appellant's argument on this issue is without merit, especially since there is no objection in the record to these jury instructions.

### DECISION

The evidence is sufficient to support the jury's verdict in favor of respondent Patrick Benson.

Affirmed.