ANNA BENTSON v. BERDE'S FOOD CENTER, INC. AND ANOTHER.[1]

June 30, 1950.

No. 35,200.

---

[1]Reported in 44 N. W. (2d) 481.

*Charles H. Weyl,* for appellant.
*Clifford W. Gardner* and *Silver, Green & Goff,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an action for personal injuries sustained by plaintiff on February 12, 1948, at about 4:51 p. m., as the result of a fall on the sidewalk in front of a building occupied by defendant Berde's Food Center, Inc. (hereinafter referred to as Berde's) on Wabasha street in St. Paul. Joined as a defendant also is Catherine R. Schoenstein, owner of the building. Berde's, her tenant, occupied the first floor and basement of the building. At the close of the trial, the jury returned a verdict against Berde's alone. This is an appeal from the judgment entered after denial of said defendant's motion for judgment notwithstanding the verdict or a new trial.

Plaintiff bases her cause of action upon the alleged negligence of defendant Schoenstein in failing to maintain the gutters, drains, eaves, awnings, and other appurtenances of the building, including a four-foot overhang, so as to prevent water from melting snow from dripping therefrom to the public sidewalk adjacent to the building on Wabasha street and forming thereon ice hazardous to people using such sidewalk; and upon the alleged negligence of Berde in causing ice to accumulate in an artificial manner on such sidewalk and in neglecting to remove or treat such ice so as to make the walk safe for persons using the same.

The building is a five-story structure. At the time of the accident, Berde's occupied the first floor and basement thereof. The basement extended under the sidewalk in question and was heated by a Northern States Power Company main, which served to melt ice and snow on the sidewalk. Supplies for Berde's are taken into the store through large iron doors in the sidewalk over a chute leading into the basement. There are display windows on both sides of the entrance. One was used at the time by Berde's for the purpose of displaying meat and fish placed on cracked ice in a bin therein. This display took up about one-half of a 10-foot window to the north of the entrance.

Just before the accident, plaintiff was walking along Wabasha toward the meat and fish window to look at the display therein. A sheet of ice not more than half an inch in thickness and one-half a foot in width then extended for several feet parallel with and about one and one-half to two feet out from the display window in question. The remainder of the sidewalk was clear. As she walked toward the window, plaintiff slipped and fell on this strip of ice, sustaining the injuries for which the action was brought. It is her contention that this ice was not the result of natural causes, but was an artificial accumulation occasioned by defendants' negligence, as above set forth.

Evidence presented by plaintiff was directed *entirely* toward establishing that water had leaked through a small opening in the

cornice on the roof of the building, fallen to the sidewalk, and frozen there to form the ice ridge described.

On behalf of defendant Catherine R. Schoenstein, owner of the building, evidence was presented that there was no opening in the cornice through which water might drip. An employe of Citizens Ice & Fuel Company, called on her behalf, testified that on the day of the accident the company had delivered 100 pounds of crushed ice in a canvas sack to Berde's. The deliveryman for Citizens Ice & Fuel Company, likewise called by the building owner, testified that about 5:30 that morning he had delivered the ice to Berde's, at that time placing it on the sidewalk near the meat and fish window, the store then being closed. On cross-examination, his testimony indicated that he may have left it in the vestibule south of the meat and fish window.

Arthur C. Wetzel, maintenance man for the building, called by the owner, testified that at times he had seen pools of water where deliveries of ice and fresh vegetables to Berde's had been left on the sidewalk, but could not state whether he had observed anything of this nature during February 1948. He also testified that at a time long subsequent to the accident he saw water on the sidewalk which he thought was the result of leakage from the meat and fish window, but that he could not remember seeing ice on the sidewalk during February 1948 other than that resulting from natural causes. Evidence was presented by plaintiff that an employe of Berde's had at times cleared the sidewalk of ice, and that after the accident another employe had sprinkled salt on the ice formation.

In submitting the case to the jury, the trial court charged it as follows:

"So here, if water was collected and cast on the sidewalk adjoining the Berde's store by the cornice different from what would have been cast on it by the ordinary operations of the weather and if it froze into ice and if such ice made the sidewalk unsafe for ordinary use and *if the Berde company failed to use ordinary care to remove the danger from such ice on the sidewalk in front of the store, then the Berde company was negligent,* and if Mrs. Bentson slipped and

fell because of such ice, then the Berde company would be liable in damages to Mrs. Bentson." (Italics supplied.)

Beyond the above references, no suggestion was made either in the pleadings, the evidence presented, the closing arguments, or the court's instructions to the jury that the ice had formed as a result of anything other than water dripping through an opening in the cornice.

■ It is well established that the duty of keeping a sidewalk in a reasonably safe condition is upon the city and not the abutting owners or occupants. Noonan v. City of Stillwater, 33 Minn. 198, 22 N. W. 444, 53 Am. R. 23; Young v. Village of Waterville, 39 Minn. 196, 39 N. W. 97; Boecher v. City of St. Paul, 149 Minn. 69, 182 N. W. 908; Johnson v. City of Redwood Falls, 204 Minn. 115, 282 N. W. 693; Shepstedt v. Hayes, 221 Minn. 74, 21 N. W. (2d) 199.

■ It has been held that a building owner who, for the convenience of the public and tenants, has laid a sidewalk across a boulevard to the curb is not under obligation to keep it free of snow and ice, Burke v. O'Neil, 192 Minn. 492, 257 N. W. 81; McDonough v. City of St. Paul, 179 Minn. 553, 230 N. W. 89; and that a building owner who, for the convenience of tenants and the public, has shoveled snow from his walk does not thereby assume liability for ice forming thereon from natural causes, Abar v. Ramsey Motor Service, Inc. 195 Minn. 597, 263 N. W. 917.

■ On the other hand, it is well settled that a person may not use his property carelessly to the injury of others, and that where the owner of abutting property maintains it so that ice is caused to form on the adjacent sidewalk as the result of artificial rather than natural causes, liability for injuries sustained by a person falling thereon may follow. Isham v. Broderick, 89 Minn. 397, 95 N. W. 224; Bannister v. George H. Hurd Realty Co. 131 Minn. 448, 155 N. W. 627; Johnson v. Elmborg, 165 Minn. 67, 205 N. W. 628.

■ Under the principles above enunciated, it is clear that no obligation rested upon Berde's to remove ice from the sidewalk in front of its store which had formed as the result of negligence on the part of the owner in maintaining the building cornice, unless

some act of negligence on the part of Berde's prevented the dripping water from flowing off the sidewalk into the street.

More specifically, to sustain the verdict, the evidence must be sufficient to support a finding that (1) the ice had formed as the result of water dripping from the canvas sack of ice delivered to and left on Berde's sidewalk early in the morning; or (2) the ice had formed as the result of leakage in the meat and fish window maintained by Berde's; or (3) drainage of water dripping from an opening in the cornice was prevented by the steam pipes underneath the sidewalk maintained by Berde's.

■ Viewed in the light most favorable to plaintiff, we feel that the evidence is insufficient to support a finding favorable to her on any of such issues. There is no evidence that the ice in the 100-pound sack had melted on the morning in question or had anything to do with the formation of the ridge. The exact spot where it was placed is in doubt. It was removed from the street after the store opened that morning. The accident occurred at 4:51 in the afternoon. The temperature that morning was approximately six degrees above zero, indicating the improbability that such ice had melted and that the water had subsequently refrozen. There was no evidence that water had leaked from the meat and fish window during the month of February 1948, or at any time until many months subsequent to the accident. Evidence of the location of the ice ridge a foot and a half to two feet out from and parallel with the base of this window would appear to be inconsistent with a finding that the ridge was caused by leakage therefrom. There was no testimony whatever that the steam pipes under the sidewalk bore any relationship to the formation of the ice ridge. It would be impossible to say from the evidence that heat from such pipes had prevented drainage of water dripping on the sidewalk from the cornice or had subsequently resulted in its freezing. Rather, the opposite effect would seem to follow. Further, the record does not disclose responsibility for the installation or maintenance of such pipes or who was required to furnish heat therefor.

In view of the evidence presented as summarized above, we feel that the verdict against defendant Berde's Food Center, Inc., cannot be sustained.

Reversed with directions to enter judgment for defendant Berde's Food Center, Inc.

