529 N.W.2d 401 (1995)
UNITED PRODUCTS CORPORATION OF AMERICA, INC., Appellant,
v.
ATLAS AUTO PARTS, INC., Respondent.
No. CX-94-1649.
Court of Appeals of Minnesota.
March 21, 1995.
*402 Steven L. Theesfeld, Jeffrey M. Baill, Wasserman and Baill, Minneapolis, for appellant.
Shawn M. Raiter, Barbara R. Hatch, King & Hatch, P.A., St. Paul, for respondent.
Considered and decided by PARKER, P.J., NORTON and SCHUMACHER, JJ.

OPINION
NORTON, Judge.
Appellant contends the trial court erred in directing verdicts on a landowner's duty to protect adjacent landowners by deterring criminal activity on its property and properly maintaining its property. We affirm.

FACTS
Appellant United Products Corporation is a building materials supplier in St. Paul who operates its business next to respondent Atlas Auto Parts, an automobile salvage yard. Both lots are fenced in. Due to problems with intruders, thieves, and vandals, appellant had attempted to increase its security by installing heavier fencing and motion detectors. Respondent removed all items of value from the junkyard at night and stored them in a building which was protected by a security system. Respondent testified that different fencing and motion detectors were not feasible security devices because respondent did not own the property; it merely leased it from the property owner.
Despite these efforts, appellant fell prey to thieves and vandals in 1983, 1986, 1987, 1988, and 1989. Similarly, vandals had damaged respondent's property prior to the March 1990 fire. Appellant's personnel testified that, in prior incidents, vandals who had entered respondent's property had cut the fence in order to gain access to appellant's property.
The parties agree that on the evening of March 27, 1990, unidentified vandals started two fires in respondent's junkyard: one near the property border and one 200 feet east of the fence that separated the parties' properties. Respondent stacked junked automobiles along this east fence; some of these *403 autos still had gas and oil in the engine. The fire captain who investigated the scene said that the fire had not yet spread over the property line onto appellant's property at the time the fire company arrived. Because of "radiated heat," however, the fire eventually spread to the pole barn on appellant's property, damaging the barn and its contents.
Appellant brought this action, alleging that respondent negligently maintained the junkyard and failed to protect adjacent property from damage. During trial, respondent moved for a directed verdict arguing that it owed no duty to secure or maintain its premises in order to protect appellant. Although the trial court denied the motion to dismiss, it made two conclusions of law which limited how appellant tried its case. The court ruled that respondent had no duty to deter criminal activity on its property because it had no "special relationship" with appellant, and respondent owed no common law duty to maintain its property so as to protect appellant's property because respondent had a similar statutory duty under the Minnesota fire code.
At the close of evidence, the jury returned a special verdict finding that respondent was not negligent. The trial court entered judgment based upon those findings and denied appellant's motion for a new trial.

ISSUES
1. Did the trial court err in concluding that respondent owed no duty to deter criminal activity on its property in order to protect appellant's adjacent property?
2. Did the trial court err in concluding that respondent owed no common law duty to maintain its property in order to protect appellant's property from an unreasonable risk of harm?

ANALYSIS
On appeal from a directed verdict, the reviewing court makes an independent assessment of its appropriateness. A motion for a directed verdict presents a question of law for the trial court: whether the evidence is sufficient to present a fact question for the jury to decide. A directed verdict should be granted only where, in light of the evidence as a whole, it would be the duty of the trial court to set aside a contrary verdict as manifestly contrary to the evidence or to the law. Finally, in considering the motion, the trial court must accept as true the evidence favorable to the adverse party and all reasonable inferences which can be drawn from that evidence. This court must apply the same standard.
Claflin v. Commercial State Bank of Two Harbors, 487 N.W.2d 242, 247 (Minn.App. 1992) (citations omitted), pet. for rev. denied (Minn. Aug. 4, 1992).

1. Duty to Protect
Whether a legal duty exists is an issue for the court to determine as a matter of law. Larson v. Larson, 373 N.W.2d 287, 289 (Minn.1985). Generally, a defendant has no duty to control a third person in order to prevent that person from harming another. Lundgren v. Fultz, 354 N.W.2d 25, 27 (Minn. 1984); Restatement (Second) of Torts § 315 (1965). The duty to control a third person exists only if a "special relationship" exists between the defendant and the third person, and if the harm is foreseeable. Lundgren, 354 N.W.2d at 27.
Appellant first contends that respondent had a duty to control the vandals who started the fire on respondent's property because a special relationship existed between them. Because appellant raises this theory of liability for the first time on appeal, it is beyond our scope of review. See In re Guardianship of Dawson, 502 N.W.2d 65, 67 (Minn.App.1993) (appellate review limited to issues presented to and decided by trial court), pet. for rev. denied (Minn. Aug. 16, 1993). Even if we did address this issue, however, appellant's argument would fail because this case lacks an essential element of liability: respondent's ability to control the vandals. See Leaon v. Washington County, 397 N.W.2d 867, 873 (Minn.1986) (special relationship creating duty to control exists between landowner and third party who enters land if landowner knows or has reason to know (a) that it has the ability to control third party and (b) of the need and opportunity *404 to exercise that control); see also Erickson v. Curtis Inv. Co., 447 N.W.2d 165, 169 (Minn.1989) (law cannot impose duty on landowner to outwit unknown "slippery criminal").
Appellant next contends that respondent had a duty to protect appellant because a special relationship existed between them. Again, we disagree. "As to business enterprises generally, the law has been cautious and reluctant to impose a duty to protect." Erickson, 447 N.W.2d at 168. To have a special relationship and a duty to protect in this case, appellant needed to have entrusted its safety to respondent, respondent needed to have accepted that responsibility, and respondent had to have the ability to protect against the harm the vandals created. See id. (generally defining "special relationship" in "duty to protect" context).
The evidence here does not establish those necessary elements. The record shows that appellant secured its own property against theft and vandalism by installing a heavier fence and motion detectors on its property. Although appellant spoke with respondent about security concerns, respondent told appellant it could not afford to take any further security measures because it only leased the property. This record contains no evidence that appellant entrusted its safety to respondent or that respondent accepted that responsibility. Without that entrustment, no special relationship existed between the parties and, thus, respondent had no duty to protect appellant. Id.
Appellant contends, however, that Erickson compels finding a special relationship here. We cannot agree. Erickson involved a merchant-customer relationship between the operators of a parking ramp and a customer who had parked her car there. The court determined that the operators of the ramp owed customers a duty of care to deter criminal activity on its premises in order to protect customers from personal harm. Id. at 169-70. Unlike Erickson, the parties here, who are adjacent property owners, have less connection than the merchant and customer in Erickson. Appellant is not respondent's invitee. Unlike the parking ramp intended for public use in Erickson, respondent's junkyard is surrounded by chain-link fence to deter unauthorized entrants. Given these substantial differences between the cases, we cannot read Erickson to create a special relationship here, especially when the Erickson court reluctantly extended the duty to protect to parking ramp facilities and limited its holding to the facts of that case. Id.
Nor do we agree with appellant that, "regardless of the special relationship," respondent should be liable solely because the damage was foreseeable. "[T]he issue of foreseeability need not be reached when there is no special relationship." Errico v. Southland Corp., 509 N.W.2d 585, 587 (Minn. App.1993), pet. for rev. denied (Minn. Jan. 27, 1994).
This authority supports the trial court's decision to rule as a matter of law that respondent had no duty to protect appellant. This directed verdict was proper.

2. The Duty to Maintain Property to Prevent Harm to Appellant
Appellant contends the trial court erred in concluding that respondent only owed appellant a statutory duty of maintenance under the fire code, and owed no common law duty to maintain its property in order to protect appellant from an unreasonable risk of fire. Appellant bases its argument on foreign cases and Bentson v. Berde's Food Center, Inc., 231 Minn. 451, 455, 44 N.W.2d 481, 483 (1950) (where owner of abutting property improperly maintains building so as to cause ice build-up on sidewalk that would not naturally have formed, owner may be liable for injuries to pedestrian; "person may not use his property carelessly to the injury of others"). We are not persuaded.
First, Bentson involved injuries to a pedestrian on a public sidewalk whereas the property at issue here is respondent's junkyard, which is secured from the public by chain-link fence. Second, the injury in Bentson occurred when a pedestrian slipped on ice while using the public sidewalk. In contrast here, the fire damage did not arise from "use" of the junkyard; rather, the damage was the result of vandalism.
*405 Third, and most importantly, the statutory duty of care set out in the fire code encompassed the allegations of improper maintenance that appellant raised. The Minnesota Uniform Fire Code regulates the accumulation and waste of combustible and flammable materials, the storage of combustible materials, and maintenance of an automobile salvage yard. See Minnesota Uniform Fire Code §§ 9.103, 11.201(a), 11.203(b), 34.101 (1988).
The trial court read these fire code provisions in their entirety when it instructed the jury. In addition, the court instructed the jury on the responsibilities of the fire marshal to enforce the fire code by inspecting property and reporting all code violations. The court also instructed the jury on the definition of negligence and stated, "Certain duties are imposed by the Minnesota Uniform Fire Code. A violation of duties under the code is negligence." These instructions fairly and correctly set out the applicable law. See Alevizos v. Metropolitan Airports Comm'n., 452 N.W.2d 492, 501 (Minn.App.1990), (court will not grant new trial on appeal when jury instructions fairly and correctly set out applicable law), pet. for rev. denied (Minn. May 11, 1990).
These instructions as a whole properly set forth the standard for maintaining the junkyard and gave the jury the option of finding respondent negligent as a matter of law for having violated that fire code. The trial court did not abuse its discretion in instructing the jury. See Alholm v. Wilt, 394 N.W.2d 488, 490 (Minn.1986) (appellate court will not disturb trial court's selection of jury instructions absent an abuse of court's broad discretion).
Appellant alleged that, by failing to keep the junkyard clean, respondent contributed to the spread of the fire and failed in its duty to protect appellant. Appellant presented evidence that respondent stacked junked vehicles within a foot of the east fence adjoining appellant's property. Respondent had junked 10-25% of the vehicles without draining out the oil and gasoline from the engines. In addition, the record showed that dried leaves had collected in and around the junked cars. In response to appellant's allegations of improper maintenance, respondent presented evidence that the fire marshal had never cited respondent for fire code violations, despite regular inspections.
Based upon this evidence and the jury instructions, the jury found by special verdict that respondent had not been negligent. Judging the credibility of this evidence and these witnesses was within the province of the jury. State by Humphrey v. Briggs, 488 N.W.2d 811, 816 (Minn.App. 1992), pet. for rev. denied (Minn. Sept. 15, 1992); see also McKay's Family Dodge v. Hardrives, Inc., 480 N.W.2d 141, 146 (Minn. App.1992) (jury considers qualifications of experts and decides weight to give conflicting expert testimony), pet. for rev. denied (Minn. Mar. 26, 1992). The evidence and the law as we have outlined it here supports this verdict. See Church of the Nativity of Our Lord v. WatPro, Inc., 491 N.W.2d 1, 5 n. 8 (Minn.1992) (appellate court will not overturn special verdict unless "perverse and palpably contrary to evidence"). The trial court properly directed the verdict relating to the common law duty to maintain property.

DECISION
The trial court correctly granted a directed verdict on the issues of respondent's duties to protect appellant from harm. The record shows that no special relationship existed between them to impose such a duty. The court properly submitted the case on the basis of violation of the fire code, not a common law tort theory.
Affirmed.