IDA M. HYLAMAN v. MIDLAND INSURANCE COMPANY.[1]

February 16, 1917.

Nos. 20,151—(262).

**Accident insurance — verdict sustained by evidence.**

1. The conclusions of the jury, necessarily included in the verdict returned, that the assured in an accident insurance policy met death in a collision with the lumber on a wagon being hauled by a team while he was passing it on a motorcycle, is supported by sufficient circumstantial evidence.

[1]Reported in 161 N. W. 385.

**Evidence — testimony of medical expert.**

2. Whether a person could maintain an upright or rigid position for any appreciable time, after receiving such wounds as were shown to have been received by the assured, was a proper subject for the opinion of a medical expert, and the question and answer, as finally obtained, were not objectionable.

**Opinion evidence — discretion of court.**

3. Whether considered as an expert or nonexpert, the opinion given by the witness, a doctor, as to the manner in which the wounds he had examined and treated were produced, was not improperly received; the admission of such evidence being largely within the sound discretion of the trial court.

Action in the district court for Stearns county to recover $5,500 under a policy insuring Roy W. Hylaman against death. The case was tried before Roeser, J., who when plaintiff rested denied defendant's motion for a dismissal and at the close of the testimony its motion for a directed verdict, and a jury which returned a verdict for $5,703.50. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Benton & Morley* and *Paul Ahles,* for appellant.

*J. D. Sullivan,* for respondent.

HOLT, J.

Plaintiff, the beneficiary in an accident insurance policy, recovered for the death of the insured. Defendant appeals from the order denying its blended motion for judgment notwithstanding the verdict or a new trial.

The first contention is that the evidence does not sustain the verdict, and that no evidence can be produced which would support a recovery such as plaintiff demanded and received. For an annual premium of ten dollars, the company, whose contracts of insurance defendant has now assumed, agreed to pay plaintiff $5,500, in case her son, Roy W. Hylaman, met accidental death while riding upon a bicycle propelled by gasolene and not being used for any business purpose, and in consequence of a collision with any conveyance except another motorcycle. To warrant a recovery plaintiff must therefore prove that the death of

the assured resulted in consequence of a collision with another conveyance not a motorcycle while he himself was riding a bicycle propelled by gasolene and not for business purposes. The evidence leaves no room for dispute as to these facts:

Roy W. Hylaman lived at Sauk Center several blocks north of Sauk river and worked as a clerk in a store a few blocks south of the river.

A steel bridge spans the stream. On his motorcycle he started for dinner shortly after 12 o'clock on the day in question. As he approached the bridge a team hauling a load of lumber, going north, was just about entering thereon. The teamster saw Roy coming up behind, and turned the team to the right to give him plenty of room to pass. Roy turned to the left, and in passing the loaded wagon the motorcycle was observed to be not controlled by him, the wheels struck a cement stone close to the foot walk on the left of the roadway and the machine wobbled on until it passed the team some 30 or 40 feet when Roy was seen to fall off, striking on his left side or shoulder. He was picked up unconscious, and died within 40 hours thereafter without having regained consciousness.

The only external wounds were slight contusions on his left arm and shoulder, a scratch on the left side of the face, and a cut over his left eye extending over the bridge of the nose crushing it.

The medical testimony showed that death resulted from a fracture at the base of the skull. There were but two eye witnesses to the accident, Mr. Deyoe, the driver of the team, called by defendant, and Mr. Holman, called by plaintiff, who was some 75 feet away, west of the road and slightly to the south of the bridge. It is readily seen that the vital fact for plaintiff to prove was that Roy actually collided with the conveyance driven by Deyoe and by reason thereof death resulted.

The contention of defendant, urged with great force and earnestness, is that the evidence did not permit the jury to arrive at the conclusion that there was a collision with the conveyance mentioned. Neither of the two witnesses saw Roy come in contact with any object which might have caused the wound which crushed the bridge of the nose or made the cut over the left eye, unless this occurred when he fell from the motorcycle. Both are clear that his body did not strike against any part of the bridge railing or stanchions. Mr. Deyoe states that he did not come

within 5 or 6 feet of the wagon. As stated, the wagon was loaded with siding which projected some 4 feet beyond the tail-board.

The theory of plaintiff is that, as Deyoe turned to the right to give Roy more room to pass on the left, the rear of the load swung to the left at the very moment Roy attempted to pass it, so that he collided with the projecting lumber thus causing the wounds on his nose and forehead and fracturing the base of the skull; that the blow so received rendered him incapable of controlling the motorcycle, so that it hit the cement stone on the side; and that the rigidity of the muscles alone, set by the fatal wound, kept him on the machine for the short distance it wobbled on after the injury. The evidence supporting this theory is this: Mr. Holman testified that just as the rear end of the load swung out toward the west he saw Roy about to pass it, but then the trunks of two trees came between the line of vision of the witness and Roy so that for from 2 to 4 feet he could not see the latter. As soon as he again saw him, and before the motorcycle struck the cement stone, it seemed not to be controlled by the rider but wobbled on until the latter fell off. The evidence also established that the wounds over the eye and nose were cuts that could not have resulted from the fall from the machine, for they were free from dust or dirt, and this could not well have been so if they had been inflicted by contact with the dusty bridge floor; moreover, the fall was not violent, for the machine was then well slowed down, and the expert testimony indicated that the fracture at the base of the skull could not have been produced by such a falling from the machine as Roy had, according to the eye witnesses.

We therefore think that, notwithstanding Deyoe's testimony, the jury could rightfully conclude from the evidence that the blow, which caused the fracture at the base of the skull, was received by his forehead, at the place of the cuts, coming in contact with the projecting lumber on the conveyance he was attempting to pass, and that the evidence excludes every other cause to which the fatal accident might be ascribed. The verdict, approved as it is by the trial court, must therefore stand, unless other errors assigned call for a new trial.

The doctor, who reached the deceased within 5 minutes of the accident and who thereafter attended him, was called as a witness and testified, without objection, that the object causing the wound or cut on

the forehead and bridge of the nose, by the severity of the contact, also produced the fracture at the base of the skull. Then he was asked whether a man, receiving a blow on the head of sufficient violence to cause the wound and fracture he found in this case, while riding on a motorcycle, could still retain sufficient vitality or muscular activity to remain on the vehicle, or would it necessarily knock him off then and there.

The objection was made that the answer called for did not come within the proper field of expert testimony of a doctor. Thereupon plaintiff's attorney attempted to state the scope and purpose of the inquiry and was met with the further objection that no foundation was laid. Counsel for plaintiff then stated: "There is no direct evidence that he in fact hit it (the lumber on the wagon), but I am asking this hypothetical question based on the reasonable inference that can be derived. We have shown that he did not hit anything else, and I am getting at the proposition, assuming he had hit some object at that time, could he or could he not have remained upon that motorcycle?" The witness was permitted to answer, but the answer in part was not responsive in stating that the "force of the bicycle would carry him on further from where he was knocked off." Counsel at once set the witness right by asking this: "How about his muscles, his grip on the handlebar of the machine receiving a wound of that kind making him unconscious; what would be your judgment and opinion as to whether or not his muscles would contract or remain whole?" The answer was: "My opinion is they would remain rigid for a certain length of time, their reflex." We think the opinion sought, and finally obtained, was one which would aid the ordinary laymen, not having a special knowledge of the human body and the functions of its several parts, in arriving at a right conclusion upon the vital issue. The point of the question was not directed to the witness' experience with a motorcycle or to how long a stunned person could maintain an upright position thereon while it was running, nor whether the contact with the lumber, if he did run against it, would have brushed him off then and there, but rather whether a person receiving such an injury as did Roy would collapse instantly, all nerves unstrung and muscles relaxed, so that he would at once have tumbled over no matter what position he was in.

The medical expert was also asked: "What, in your judgment, must have been the character of the protuberance or obstruction, or call it anything you mind to, that caused a wound of that character, I mean with reference to being a glancing, grazing wound, or direct wound, or what did it appear to be in your judgment?" The objection "incompetent, irrelevant, immaterial, calling for a conclusion," and that the witness "was not an expert on that, he [was] a medical expert" was overruled, and we think rightly. The witness had closely examined and treated the wound. No matter how accurate and full his description, it would be impossible to place the situation so before the jury that they could form a just conclusion as to what caused the wound or the manner in which it was produced. We are not prepared to say that the witness, considered as a medical expert, could not, from the examination and attention he gave the wound, form an opinion which would aid the jury beyond the knowledge they as laymen might have acquired had each of them made the same examination the doctor had made. But that aside, a nonexpert may at times give opinion testimony, as, for instance, where it is evident that no verbal description is adequate to place all the details and shades of appearances so before the jury that, unaided by the opinion of an eye witness, a correct conclusion can be arrived at. When nonexpert opinions of this nature may be helpful is largely within the discretion of the trial court. In Jones v. Burgess, 124 Minn. 265, 144 N. W. 954, the practice, said by Mr. Thayer in his work on Evidence, p. 525, to prevail, was approved, namely: "There is ground for saying that, in the main, any rule excluding opinion evidence is limited to cases where, in the judgment of the court, it will not be helpful to the jury. * * * It is obvious that such a principle must allow a very great range of permissible difference in judgment; and that conclusions of that character ought not, usually, to be regarded as subject to review by higher courts." Examples of admissibility of nonexpert opinions are found in State v. Lucy, 41 Minn. 60, 42 N. W. 697; McKillop v. Duluth St. Ry. Co. 53 Minn. 532, 55 N. W. 739; Sturm v. Northwest Mills Co. 114 Minn. 420, 131 N. W. 472; Swadner v. Schefcik, 124 Minn. 269, 144 N. W. 958; State v. Jones, 126 Minn. 45, 147 N. W. 822; State v. Ward, 127 Minn. 510, 150 N. W. 209, Ann. Cas. 1916C, 674; State v. Virgens, 128 Minn. 422, 151 N. W. 190; Bannister v.

George H. Hurd Realty Co. 131 Minn. 448, 155 N. W. 627; 1 Dunnell, Minn. Dig. §§ 3312 and 3315.

We find no grounds for disturbing the verdict.   Order affirmed.