## JENNIE AND FRED ABAR v. RAMSEY MOTOR SERVICE, INC.[1]

December 13, 1935.

No. 30,470.

[1]Reported in 263 N. W. 917.

*B. W. Wilder* and *Earl D. Mora,* for appellants.

*Durham & Swanson,* for respondent.

HOLT, JUSTICE.

The plaintiff Jennie Abar sued defendant for damages resulting from a fall upon a sidewalk in front of defendant's premises, alleged to have become dangerous to travelers thereon through defendant's negligent failure to remove the ice and snow therefrom. The plaintiff Fred Abar sued for consequential damages sustained by him on account of his wife's fall. The actions were tried as one. It will not be necessary to refer to plaintiff Fred Abar's suit, for if his wife cannot recover neither can he.

The evidence showed that in the city of Minneapolis on January 21, 1934, at 9:30 p. m., as plaintiff, her husband, and an eight-year-old child were walking on the sidewalk on the south side of Twelfth street from LaSalle toward Yale Place, plaintiff fell where a driveway passes over the sidewalk into defendant's motor service building. The driveway is even or level with the sidewalk. There were lumps or ridges of ice or packed snow estimated to be of the depth of six inches on the westerly side of the driveway where plaintiff fell. There was testimony to the effect that the rest of the sidewalk was practically free from ice and snow; and also that on this driveway, as automobiles passed over it into defendant's place of busi-

ness, not only was the snow packed down but ice would fall off the cars onto the walk. Holding that the case made was ruled by McDonough v. City of St. Paul, 179 Minn. 553, 230 N. W. 89, the court directed a verdict for defendant. Plaintiff appeals from the order denying her motion for a new trial.

After the jury was impaneled and before the introduction of any testimony, plaintiff moved to amend the complaint by alleging two ordinances requiring the owners or occupants of premises abutting sidewalks within the fire limits to keep the same free from ice and snow; and that Twelfth street, between the cross streets mentioned, was within the fire limits. The denial of the motion is assigned as error. Whether a litigant at the opening of the trial should be permitted to amend his pleading is left to the discretion of the trial court. We cannot hold that there was any abuse of that discretion in the instant case. Furthermore, since Noonan v. City of Stillwater, 33 Minn. 198, 22 N. W. 444, 53 Am. R. 23, it has been settled that an ordinance or a charter provision cannot shift the responsibility of a city for the condition of its streets upon the abutting property or its owner or occupant. Burke v. O'Neil, 192 Minn. 492, 257 N. W. 81.

There are many assignments of error based on rulings excluding the opinion of the witnesses that from the appearance of the hummocks there had been an attempt by pick or scraper to remove the ice from the westerly part of the driveway; and to connect this condition with defendant it was proved that it had tools for doing such work and that employes had orders to keep the sidewalk free of snow and ice. There are many instances in the books where a lay witness has been permitted to give his opinion as to what had caused the existing condition instead of limiting him to describing what he actually saw. Words may fail to convey to the jury the actual situation as the witness saw it, but by expressing his opinion or conclusion as to the cause of the situation the jury may be able to comprehend what he saw. The following cases are illustrative of the rule: State v. Lucy, 41 Minn. 60, 42 N. W. 697; Patterson v. Blatti, 133 Minn. 23, 157 N. W. 717, L. R. A. 1916E, 896, Ann. Cas. 1918D, 63; Olson v. Purity Bak. Co. 185 Minn. 571, 242 N. W.

283; 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 3315; 4 Wigmore, Evidence (2 ed.) § 1924. But the admission of such evidence is left to the discretion of the trial court and not subject to review on appeal. Hylaman v. Midland Ins. Co. 136 Minn. 132, 161 N. W. 385.

Plaintiff assigns error on the refusal to open the case after she rested to take the testimony of two witnesses, Bostrom and Nelson, to prove that there had been an attempt to remove the accumulations of snow and ice, that quantities adjacent to removed ice and snow were permitted to remain, and that they could determine that fact from examination of marks made by the instruments used in cleaning the walk. The two witnesses had testified very fully as to what they observed soon after plaintiff fell; but their conclusions that there had been an attempt to clean off the ice, and the attempt abandoned, were excluded. This testimony of Bostrom went in without objection:

"I saw some ice; it looked like it was greasy; looked like somebody had started to clean it off but didn't go ahead with it. * * * Clumps of ice five or six inches high and greasy like.

Q. "Could you tell from the appearance of it whether it had been there and accumulated over a period of time, or recent?

A. "Oh, it had been there some time.

Q. "There wasn't any fresh snow?

A. "No; it was kind of slushy. * * *

Q. "Was the grease on top of the ice or on the sidewalk?

A. "The grease? I don't know whether it was grease, but it looked greasy on top of the ice.

Q. "You mean by that it was soft?

A. "No it was hard, slippery. * * * There was clumps there."

To the witness' statement, "looked like they had used one of them choppers and quit," an objection that it was speculative was sustained. Nelson's testimony was substantially the same. There was no abuse of discretion in refusing to open the case for the purpose of receiving the proffered testimony from these two witnesses. They had testified as fully as they properly could except

as to conjectures and opinions. Furthermore, the weather report received in evidence shows that only six inches of snow had fallen from the first to the 13th of January and none thereafter until after the day of the accident. The maximum temperature on the 20th of January was 41 degrees above zero, and on the 21st the minimum was 35 degrees above zero and the maximum 42 degrees. In view of that temperature, little dependence could be placed on testimony that one could determine from marks on "slushy, greasy" ice what, if any, tool had been used in an effort to remove the same or what resulted from such effort.

After defendant moved for a directed verdict, plaintiff moved for leave to open the case and introduce evidence then available and also for leave to open the case and be permitted to dismiss. Both of plaintiff's motions were denied. We assume that Brunskill was the witness available when the motion was made, but who was not there before plaintiff rested. No disclosure was made to the court as to what the then available testimony was. But on the motion for new trial newly discovered evidence was one ground, supported by the affidavit of Brunskill and also by that of Dooley, purporting to state the newly discovered evidence. They can testify to no more than the witnesses Bostrom and Nelson did testify to and to the opinions and conclusions the latter attempted to give but which the court excluded. There was no abuse of discretion in the refusal to open and receive Brunskill's evidence, nor in the refusal to open and allow plaintiff to dismiss. The court was not informed of any evidence in existence which might permit a recovery if that already adduced did not so permit. As for the newly discovered evidence being a ground for new trial, it is merely cumulative, and no diligence is shown to procure both Brunskill and Dooley before plaintiff rested.

The real merit of the appeal depends on whether the defendant, the abutting owner, was liable for the condition of the sidewalk where plaintiff slipped and fell. The duty of keeping the sidewalk in a reasonably safe condition for travel is placed on the city and not upon abutting owners or occupants. 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 6829, 6845; Boecher v. City of

St. Paul, 149 Minn. 69, 182 N. W. 908; McDonough v. City of St. Paul, 179 Minn. 553, 230 N. W. 89; Burke v. O'Neil, 192 Minn. 492, 257 N. W. 81. Plaintiff's counsel concedes that such is the settled law in this state. But the contention is that the evidence made it a jury question whether defendant was responsible for the ridge or clump of ice upon which plaintiff fell by allowing its customers' cars to pass over the sidewalk and track down the snow and slush thereon, and also that by removing the snow and ice in spots only a danger was created which caused plaintiff's fall. That there is a driveway over a sidewalk into the abutting occupant's premises cannot lay the burden on the occupant to keep the driveway clear of snow or ice any more than the part of the sidewalk where there was no driveway. But if an owner or occupant of property abutting on a sidewalk causes water to be diverted thereon which forms dangerous ice or drops "clumps" of ice or deposits other obstructions thereon, he may be liable for injuries caused thereby. However, this is not a case where defendant maintains a structure in the street for his own benefit which he then must maintain in proper condition, like Ray v. Jones & Adams Co. 92 Minn. 101, 99 N. W. 782, and cases therein cited; Williams v. John A. Stees Co. Inc. 172 Minn. 35, 214 N. W. 671. Nor is it one where the abutter had diverted water onto the sidewalk which forms dangerous ice as in Johnson v. Elmborg, 165 Minn. 67, 205 N. W. 628. The only testimony upon which plaintiff can claim to have a jury question is that there was such a negligent effort by defendant to clean off the packed snow and ice that clumps or hummocks of ice were carved out and left in place, thus creating a danger or obstruction on the sidewalk. We think the proof on this proposition is so tenuous that no verdict should be allowed to rest thereon. Considering that only six inches of snow had fallen before the middle of January and none thereafter, it is inconceivable that driving cars over it would have created a bed of ice six or seven inches thick from which hummocks or clumps could have been carved of equal thickness. And having in mind the temperature, it is idle to claim that those who viewed the driveway half an hour after plaintiff fell could tell what tool had been used in the attempt to clean the

walk. Neither plaintiff nor her husband noticed any unevenness in the driveway when they passed over it a couple of hours earlier. Occupants and owners of property abutting city streets often do clean or attempt to clean the sidewalk in front thereof. Their worthy efforts should not be discouraged by holding them liable where no liability otherwise exists simply because they endeavor to free the sidewalk of snow and ice.

The defendant could not be held guilty of maintaining a nuisance by having a driveway into its premises. Where it passed over the sidewalk it was level with the sidewalk. There is no suggestion that its surface was different from that of any other part of the walk.

The order is affirmed.