## KATHERINE SHEPSTEDT v. ELISABETH HAYES AND ANOTHER.[1]

December 21, 1945.

No. 34,045.

[1]Reported in 21 N. W. (2d) 199.

*Sexton & Kennedy,* for appellant.
*Ryan, Ryan & Ryan,* for respondent.

YOUNGDAHL, JUSTICE.

This is an action to recover damages for personal injuries sustained by plaintiff as a result of a fall caused by an obstruction maintained by defendants on the sidewalk abutting a building owned by defendant Hayes, part of which was leased by defendant Houle. The case was tried to a jury, which relieved defendant Houle of liability, but returned a verdict against defendant Hayes in the sum of $2,000. From an order denying the alternative motion of defendant Hayes for judgment notwithstanding the verdict or a new trial, she appeals.

Since 1913, defendant Hayes (hereinafter called defendant) has been the owner of a lot and two-story brick building located on the southeast corner of Sixth and Laurel streets in the city of Brainerd. The front of the building runs east and west and faces Laurel street; the west side of the building runs north and south and faces Sixth street. A concrete sidewalk extends from the building to the curb on both the north and west sides of the building. The west side of the building has a double-door entrance at the south end thereof, the southerly door of which is used by the lessee, who operates a bakery in the east half of the first floor of the building,

and the northerly door of which is used by Houle, who operates a business under the name of Coast to Coast Store in the west half of the first floor of the building. Defendant has never occupied the building for any purpose of her own, but has leased it to various parties, the last of whom was Houle. From 1913 to 1930, the building was used by various lessees as a theater. In 1930, the lessee, with the consent of defendant, remodeled the building. At that time it was leased for use as a department store on the first floor and living quarters and offices on the second floor. In 1936, Houle leased the west half of the first floor of the building and since that time has been operating the Coast to Coast Store therein. In the course of the remodeling in 1930, the contractor constructed a concrete patch or slab in front of the south entrance of the building hereinbefore described and adjacent to a concrete step leading to that entrance. The step, before the patch was put in, had a rise of about 10 inches and, after the installation of the patch, about 7½ inches. The concrete patch, which is the cause of the present controversy, was about 13 feet long north and south and extended out onto the sidewalk about 4½ feet. It was about 2 to 2½ inches thick at the building line, was rounded and sloping, and tapered off to a featheredge to the north, south, and west. After a number of years the patch began to chip off at the edges, leaving a perpendicular edge along its north side 1½ inches in depth at the wall of the building and tapering off to a featheredge.

Although defendant was not in Brainerd at the time the repairs were made in 1930, she became aware of the existence of this patch of cement in 1931. Moreover, it is undisputed that she knew of the defects therein, as she was warned several times by the city engineer to remedy the condition, the first occasion being several years before plaintiff was injured.

On the evening of April 23, 1944, shortly after 9:15 p. m., plaintiff, a woman 60 years of age, while walking with two others on the sidewalk in a southerly direction on the east side of Sixth street abutting defendant's building, side-stepped a defective manhole cover located a short distance from the patch, struck the heel of

her shoe against the perpendicular edge on the north side thereof, fell to the ground, and broke her wrist. It is for this injury that she seeks damages in this action.

Defendant does not challenge the amount of the verdict, nor does she dispute the fact that the patch of cement was in a defective condition and caused plaintiff's fall. She does insist, however, that she is not liable, because (1) no legal duty devolved upon her in connection with the patch of cement; (2) the evidence does not show that the patch was there for the convenience of the building; (3) the court in charging the jury erroneously assumed as a fact that the patch was there for the convenience of the building; and (4) the court erroneously submitted the public nuisance statute to the jury.

■ The action was originally brought on the theory of negligence in the construction of the patch of cement. However, at the conclusion of the trial, to conform to the proof, the complaint was amended to allege negligence in the maintenance of the patch so as to result in a dangerous condition. A general assignment of error is made claiming error in refusing a new trial on certain grounds, one of which was the granting of the amendment, but the issue is not argued in the brief and must be considered waived. An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection. Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312. We consider the case, therefore, as one based upon the theory of negligence in maintaining the patch of cement and in permitting it to become dangerous and hazardous. There arises, then, the question of what legal duty, if any, defendant owed to plaintiff in connection with its maintenance.

■ The duty of keeping a sidewalk in a reasonably safe condition for travel is placed on the city and not upon abutting owners or occupants. Abar v. Ramsey Motor Service, Inc. 195 Minn. 597, 263 N. W. 917; McDonough v. City of St. Paul, 179 Minn. 553, 230

N. W. 89; Freeman v. City of Minneapolis, 219 Minn. 202, 17 N. W. (2d) 364.

■ However, abutting owners have been held liable for injuries caused by negligence in maintaining in a dangerous and defective condition such facilities as coalholes, vaults, and passageways erected on the sidewalk for the convenience of a building.[2] The principle has also been applied to a case of injury resulting from tripping over a sidewalk made uneven when defendant raised an adjoining building and removed material supporting the sidewalk so that it sagged. Williams v. John A. Stees Co. Inc. 172 Minn. 35, 214 N. W. 671.

■ While most of the decided cases involve coalholes, vaults, and passageways erected by the landowner to provide access to his basement for goods or persons, we see no difference in principle between these cases and the case at bar. The fact that here the facility is a patch of cement rather than a coalhole or passageway is unimportant if the patch of cement is a facility maintained by the owner for the convenience of the building. We have no hesitancy in holding that the rule of law applied in those cases should also govern here.

■ But, asserts defendant, there is no evidence that the patch of cement was placed on the sidewalk for the convenience of the building. She complains because the patch has been variously described as a ramp, step, runway, or slab. She seems to prefer that it be called a patch of cement. As we see it, it is entirely irrelevant and immaterial what name is used to describe the condition. We are not interested in the "skin of words, but the core"[3] of what composed the alleged obstruction. As to that, there

[2]Landru v. Lund, 38 Minn. 538, 38 N. W. 699; Ray v. Jones & Adams Co. 92 Minn. 101, 99 N. W. 782; Latell v. Cunningham, 122 Minn. 144, 142 N. W. 141; Williams v. John A. Stees Co. Inc. 172 Minn. 35, 214 N. W. 671; City of Wabasha v. Southworth, 54 Minn. 79, 55 N. W. 818; Mix v. Downing, 176 Minn. 156, 222 N. W. 913. *Cf.* Kooreny v. Dampier-Baird Mortuary, Inc. 207 Minn. 367, 291 N. W. 611; Freeman v. City of Minneapolis, 219 Minn. 202, 17 N. W. (2d) 364.

[3]East New York Sav. Bank v. Hahn, — U. S. — (filed October 1945), 66 S. Ct. 69, 90 L. ed. —.

is no difficulty. The parties concede that it consisted of a patch of cement 13 feet long north and south, extending onto the sidewalk 4½ feet with a thickness of 2 to 2½ inches at the wall of the building, and tapering to a featheredge. It is also admitted that the patch of cement had become defective so that on the day of the accident it had a perpendicular edge on the north side thereof 1½ inches thick at the wall of the building and tapering off to a featheredge.

It seems to us that the record clearly justifies the conclusion that the patch of cement served as an approach to the cement step leading to the south entrance of the building. No other reasonable use is suggested by the evidence. R. T. Campbell, the city engineer, testified that the patch was there for the purpose of lowering the "step height" from the cement step to the sidewalk, and that it would serve no other purpose. True, defendant claims that the question asked the engineer was leading and improper, but she has not cited authority or argued the issue, either in her written brief or in the oral argument; therefore, that objection must be considered waived. Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312, *supra.* It appears to us that the purpose of the cement patch is almost as obvious as the cement step leading to the south door or the doorway itself. Entirely disregarding the testimony of the engineer, we believe that the evidence justifies a finding by the jury that the patch was maintained for the convenience of the building. As a matter of fact, we doubt whether any other finding would have been warranted by the testimony.

■ Defendant further asserts that the court erroneously assumed as a fact that the patch of cement was there for the convenience of the building. We do not so construe the charge. Considering the charge as a whole, we believe the court fairly submitted the issue to the jury.

■ Defendant relies principally upon cases involving injuries resulting from accumulations of ice or snow from natural causes on driveways over sidewalks, such as McDonough v. City of St.

Paul, 179 Minn. 553, 230 N. W. 89, and Abar v. Ramsey Motor Service, Inc. 195 Minn. 597, 263 N. W. 917, *supra*. As we understand defendant's position, she asserts that this is an ordinary sidewalk case, for which the city and not the abutting owner is responsible. We cannot agree with defendant's contention. Cases like the McDonough and Abar cases and other ordinary sidewalk cases are clearly distinguishable. We pointed out in the McDonough case that the dangerous condition of the sidewalk (179 Minn. 556, 230 N. W. 90) "resulted solely from the fact that travel over it had created dangerous holes and ridges in the snow and ice which had accumulated thereon from natural causes."

In the Abar case, where there was also a condition of ice and snow upon the driveway over the sidewalk, we said (195 Minn. 602, 603, 263 N. W. 919, 920):

"* * * That there is a driveway over a sidewalk into the abutting occupant's premises cannot lay the burden on the occupant to keep the driveway clear of snow or ice any more than the part of the sidewalk where there was no driveway.

\* \* \* \* \*

"The defendant could not be held guilty of maintaining a nuisance by having a driveway into its premises. *Where it passed over the sidewalk it was level with the sidewalk. There is no suggestion that its surface was different from that of any other part of the walk.*" (Italics supplied.)

The court recognized that a different situation arises when the owner maintains a structure on the street for his own benefit. In that connection the court said (195 Minn. 602, 263 N. W. 919):

"* * * However, this is not a case where defendant maintains a structure in the street for his own benefit which he then must maintain in proper condition, like Ray v. Jones & Adams Co. 92 Minn. 101, 99 N. W. 782, and cases therein cited; Williams v. John A. Stees Co. Inc. 172 Minn. 35, 214 N. W. 671."

The case of O'Hara v. Morris Fruit & Produce Co. 203 Minn. 541, 282 N. W. 274, cited by defendant (involving slipping on a visor

cap on the sidewalk), is so obviously not in point that discussion thereof is deemed unnecessary. The distinction between the instant case and the McDonough and Abar cases, which involved snow-and-ice accumulations from natural causes on a driveway over a sidewalk, appears to us clear. Here, we do not have a natural accumulation of ice and snow on the sidewalk, but a patch of cement maintained by the owner for the convenience of the building. The case at bar is more closely analogous to McCartney v. City of St. Paul, 181 Minn. 555, 233 N. W. 465, where liability against an abutting owner was sustained because of negligence in maintaining a door mat lying on the sidewalk in front of defendant's property.

■ Defendant did not relieve herself of liability by leasing the premises. Although she did not construct the patch, she became aware of its existence in 1931 and had knowledge of the defects therein when she leased the premises to Houle in 1936. If an owner maintains on a public sidewalk a facility for the convenience of a building abutting such sidewalk, and permits such facility to become defective and dangerous, and passes such condition on to the lessee, he may become liable for injuries caused by such condition. Fortmeyer v. National Biscuit Co. 116 Minn. 158, 133 N. W. 461, 37 L.R.A.(N.S.) 509; Isham v. Broderick, 89 Minn. 397, 95 N. W. 224.

■ We find no error, nor has any been pointed out to us, in the submission to the jury of the public nuisance statute, Minn. St. 1941, § 616.01 (Mason St. 1927, § 10241). See, McCartney v. City of St. Paul, 181 Minn. 555, 233 N. W. 465, *supra*. Assuming, as we have concluded, that the patch of cement was maintained for the convenience of the building, the jury was justified in finding that it had become so defective and dangerous as to constitute a public nuisance within the meaning of that statute.

Affirmed.