**G & T TRUCKING CO., Respondent,**

v.

**GFI AMERICA, INC., a/k/a Goldberger Foods, Defendant and Third-Party Plaintiff, Appellants,**

v.

**Angelo PEREZ, Third–Party Defendant.**

No. C0–95–262.

Court of Appeals of Minnesota.

Aug. 8, 1995.

Frank R. Berman, Sandra K. Kensy, Minneapolis, for appellants.

Michael C. Glover, Minneapolis, for respondent.

Considered and decided by CRIPPEN, P.J., and HARTEN, and SCHULTZ,* JJ.

---

*Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

CRIPPEN, Judge.

Respondent G & T Trucking, Inc. sued appellant Goldberger Foods for interstate shipping charges. At the close of respondent's case in chief, Goldberger moved for a directed verdict on the grounds that respondent's failure to prove its filed tariff rate constituted the omission of an essential element of its case. The trial court denied the motion and the jury later returned a verdict in favor of G & T. On the appeal perfected from the judgment, we reverse and remand the trial court's decision on appellant's motion for a directed verdict.

## FACTS

G & T Trucking provided interstate shipping services for Goldberger Foods through an intermediary, Shipper Transportation Services, Inc. Goldberger would contact Shipper when it had a shipment and Shipper would then order the trucks from G & T.

Goldberger prepared a bill of lading for each shipment, each designating Goldberger as the shipper and G & T as the carrier. The shipping charge was not shown on the bill of lading; the rate charged by G & T was contained in a separate agreement negotiated by Shipper and G & T for each shipment.

After shipment, G & T would forward the bill of lading and an invoice to Shipper for payment. Shipper would then bill Goldberger for the shipping charges plus a commission. Goldberger paid Shipper for all of its shipments, but Shipper filed for bankruptcy and went out of business without paying G & T for several of the Goldberger shipments.

G & T brought this action against Goldberger to recover unpaid shipping charges. G & T argued that the bills of lading were shipping contracts and that Goldberger had breached those contracts; Goldberger maintained that Shipper was a freight forwarder and that Goldberger satisfied its obligations when it paid the forwarder.

Neither Goldberger nor G & T introduced any evidence of the rates contained in G & T's Interstate Commerce Commission tariffs that were applicable to these shipments. Goldberger argued in its directed verdict motion that G & T could only charge the rate contained in its tariff and that G & T failed to establish a prima facie case by not introducing any evidence of the tariff.

In its special verdict, the jury found that the bills of lading were shipping contracts; that Goldberger had breached those contracts when G & T was not paid for its shipping charges; that Shipper was neither a freight forwarder nor the agent for either party; and that G & T is entitled to approximately $61,000 in damages. The damages were based exclusively on the shipping rates negotiated by Shipper and G & T.

In posttrial motions, Goldberger renewed its argument that G & T was required to prove the filed tariff rate. The trial court ruled that Goldberger should have raised the tariff argument in a counterclaim and subsequently proved that G & T rates did not conform with the filed tariff.

## ISSUE

In an action to collect shipping charges for interstate shipping services, is a common carrier required to prove its filed tariff rate as part of its prima facie case?

## ANALYSIS

■ The issue presented here is a purely legal question that we review de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Util. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984).

It is undisputed that G & T was acting as a common carrier and not a contract carrier when it provided the shipping services in question. The Interstate Commerce Act is applicable to these shipping services because they involve interstate commerce. Under Act, common carriers must publish and file their tariffs with the Interstate Commerce Commission. 49 U.S.C. § 10762(a)(1) (1988). The only rate a common carrier can charge or receive for interstate shipping services is the rate contained in its filed tariff.[1] 49

1. Congress amended the relevant portions of the Interstate Commerce Act in the Negotiated Rates Act of 1993, Pub.L. 103–180 and the Trucking Industry Regulatory Reform Act of 1994, Pub.L.

U.S.C. § 10761(a) (1988).[2]

> [T]he rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted under any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the [Interstate Commerce] Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed.

*Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 127, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990) (quoting *Louisville & Nashville R.R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915)).

■ "The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier." *Id.* at 126, 110 S.Ct. at 2766 (quoting *Keogh v. Chicago & Northwestern Ry. Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922)). The shipper and carrier cannot legally negotiate a rate different from the tariff rate. *See id.* at 130, 110 S.Ct. at 2768 ("The [Interstate Commerce] Act, as it incorporates the filed rate doctrine, forbids as discriminatory the secret negotiation and collection of rates lower than the filed rate."). When a common carrier sues to collect unpaid shipping charges, the carrier must sue to collect the rate contained in its tariff, notwithstanding the fact that it may have negotiated a different rate with the shipper.[3] *Southern Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 343, 102 S.Ct. 1815, 1821, 72 L.Ed.2d 114 (1982) ("[A] carrier has not only the right but also the duty to recover its filed tariff charges for services performed."); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983) ("A carrier's claim [for shipping charges] is, of necessity, predicated on the tariff—not an understanding with the shipper.")

■ The question here is whether the burden should be on the carrier to prove its tariff rate as part of its prima facie case or whether the burden should be on the shipper to prove, as an affirmative defense or a counterclaim, that the rate the carrier is charging is not the tariff rate. If the tariff calls for a higher rate, can the carrier maintain its competitive but unlawful rate practice by withholding evidence of the tariff, knowing that the shipper is not apt to prove the higher rate? If the carrier cannot withhold this evidence, does its failure to prove the tariff rate permit the shipper to escape not only the higher rate but the entire shipping charge obligation? If, alternatively, the tariff rate is less than the contract rate and the shipper withholds evidence of the tariff, can the shipper avoid the entire contract instead of seeking reduction in its obligation by proving the tariff? In the circumstances of this case, each party is attempting to get maximum advantage out of a situation where the parties have evidently contracted for rates that do not comply with the governing tariff.

We conclude the burden is properly placed on the carrier to prove its tariff rate. Because the carrier can legally collect only the

---

103–311. But the shipments here all occurred in 1991, prior to these amendments, so this case is governed by the then-existing law. *See Interstate Commerce Commission v. Transcon Lines,* —— U.S. ——, ——, 115 S.Ct. 689, 691, 130 L.Ed.2d 562 (1995).

2. "[A] carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title * * * shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. * * * [That] * * * carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that af-

fects the value of that transportation or service, or another device."

Pursuant to its authority under 49 U.S.C. § 10761(b), the Interstate Commerce Commission may exempt carriers from the requirements of § 10761(a). *See Exemption of Motor Contract Carriers from Tariff Filing Requirements,* 133 M.C.C. 150 (1983), *aff'd sub nom. Central & S. Motor Freight Tariff Ass'n Inc. v. United States,* 757 F.2d 301, *cert. denied* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985), *cited in Maislin Indus., U.S. Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 133, 110 S.Ct. 2759, 2769–70, 111 L.Ed.2d 94 (1990)).

3. Equitable defenses may not be asserted to prevent collection of the filed rate. *Maislin,* 497 U.S. at 127, 110 S.Ct. at 2766.

tariff rate, this rate is an essential element of the carrier's claim. "[A] party who stands to benefit from establishing an affirmative proposition of fact essential to a claim bears the burden of proof." *Zacharias v. Minnesota Dept. Of Natural Resources,* 506 N.W.2d 313, 320 (Minn.App.1993) *pet. for rev. denied* (Minn. Nov. 16, 1993) (citation omitted).

To hold otherwise might "permit[ ] the very price discrimination that the [Interstate Commerce] Act by its terms seeks to prevent." *Maislin,* 497 U.S. at 130, 110 S.Ct. at 2768. Because shippers and carriers may enter into hidden agreements to manipulate avoidance of the tariff rate, thus defeating the rule of law on collection of nontariff rates, the Supreme Court has upheld its strict adherence to the filed rate doctrine. *See Maislin,* 497 U.S. at 127, 110 S.Ct. at 2766 (refusing to recognize the carrier's misquotation of rates as a defense to collection of filed rate "prevent[s] carriers from intentionally 'misquoting' rates to shippers as a means of offering them rebates or discounts") The withholding proof of a tariff is indistinguishable from other circumstances where the parties attempt by agreement to avoid filed tariffs.

Moreover, it would be inappropriate under any circumstances for a court to enforce an agreement that is illegal under federal law. *See Central R. Co. v. United States Pipe Line Co.,* 1 F.2d 866, 870 (3rd Cir.1924) ("this court cannot sanction * * * transportation * * * at illegal rates"). Requiring the carrier to prove its tariff rate as part of its prima facie case is the only way to assure that the carrier will collect only the legal rate.

G & T asserts that the tariff rate is irrelevant to its claim because under the common law it cannot charge more than a reasonable rate. Indeed, although the filed tariff rate is the "legal rate", a carrier cannot charge more than the "lawful rate", a rate that is reasonable under common law. *See Maislin,* 497 U.S. at 128–29, 110 S.Ct. at 2767 (quoting *Arizona Grocery Co. v. Atchison, T. & S.F.*

*Ry. Co.,* 284 U.S. 370, 384–85, 52 S.Ct. 183, 184, 76 L.Ed. 348 (1932)); *see also* 49 U.S.C. § 10701(a) (rate charged by carrier must be reasonable). Until the tariff rate is determined to be unreasonable, it is the legal rate for all purposes. *Keogh,* 260 U.S. at 161–62, 43 S.Ct. at 49; *Maxwell,* 237 U.S. at 97, 35 S.Ct. at 495.

In addition, G & T's argument assumes that its own tariff rate is not reasonable. Although the shipper may challenge the tariff rate as unreasonable,[4] G & T cites no law that would allow the carrier to refuse to charge the tariff rate on the grounds that its own rate is unreasonable. If the carrier could establish the absence of a lawful rate, it would have the means to avoid tariff law requirements.

The trial court relied on *Reiter v. Cooper,* —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) for the proposition that a shipper is required to raise the tariff argument. In *Reiter,* the carrier's bankruptcy trustee brought suit against the shipper to recover the difference between the rate the carrier negotiated and collected from the shipper and the carrier's tariff rate. The Court concluded that the shipper can recover for overcharges when it shows that the filed rate is unreasonable under 49 U.S.C. § 11705(b)(3), and that a counterclaim is the appropriate process to establish the shipper's cause of action. *Id.* at ——, 113 S.Ct. at 1217–18.

But Goldberger is arguing that the tariff must be proven, not that it is unreasonable. Moreover, *Reiter* is premised on the fact that the Interstate Commerce Act specifically provides the shipper with an affirmative claim against the carrier when a tariff rate is unreasonable. But that premise is the very issue presented here: Is the shipper bound to prove the disparity between tariff rates and contract rates, or is the tariff rate a purely defensive proposition that the carrier has failed to prove an essential element of its case? *Reiter* does not offer guidance on that question.[5]

4. *See, e.g.,* 49 U.S.C. § 11705(b)(3); *Reiter v. Cooper,* —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

5. The Interstate Commerce Act does grant a shipper a cause of action similar to the unreasonable rate action in *Reiter* against a carrier that charges the shipper *more* than the tariff rate. 49 U.S.C. § 11705(b)(1). But the Interstate Com-

■ In sum, we conclude that it was error for the trial court to simply deny Goldberger's motion for a directed verdict.[6] Still, if the trial court had correctly determined that G & T had failed to introduce evidence on an essential element of its claim, dismissal with prejudice was not the only possible response to Goldberger's motion for a directed verdict. The law on directed verdicts is not so rigid that it guarantees Goldberger the opportunity to escape all liability. Rather, assuming there was no prejudice to Goldberger, the trial court in its discretion could have allowed G & T to reopen its case to provide the missing proof. *Sports Page, Inc. v. First Union Mgmt.*, 438 N.W.2d 428, 430 (Minn. App.1989); *see also McDonald v. Western Union Tel. Co.*, 250 Minn. 406, 412, 84 N.W.2d 630, 634 (1957) (holding trial court did not abuse discretion by suggesting plaintiffs reopen their case to present additional evidence); *Cf. Abar v. Ramsey Motor Serv., Inc.*, 195 Minn. 597, 601, 263 N.W. 917, 919 (1935) (holding trial court did not abuse discretion by denying plaintiff's motion to reopen to present additional evidence, where trial court was not informed of existence of evidence that would afford recovery.)[7]

As a result of its holding, the trial court lost its opportunity to decide the most appropriate response to Goldberger's motion for a directed verdict. And we do not have sufficient information to determine the appropriate course of action at this point. We are compelled to remand the case to the trial court to determine the proper disposition of Goldberger's motion.

On remand, if G & T can present evidence of its tariff rate and make the appropriate motions, the trial court must determine whether to allow G & T to reopen its damage claim or dismiss the case with prejudice. At the stage of these proceedings reached through the time of the remand, the trial court may believe that vacation of G & T's judgment and dismissal of its claim with prejudice is the only fair remedy to deal with its failure to prove filed tariff rates. Alternatively, the court may believe it is fair to simply permit G & T to give up its stance for a contract rate and to prove its tariff rate, permitting the trial court to amend the damage award and judgment accordingly. If G & T elects not to present evidence of its tariff rate, then the trial court must vacate the judgment and dismiss the case with prejudice.

In any event, G & T's failure to prove the applicable tariff rate affected only the jury's findings on damages; as subsequently determined in this opinion, there was ample evidence to support the jury findings on liability. On remand, the liability determination must be allowed to stand.

■ Goldberger argues that the trial court should have granted its motion for judgment notwithstanding the verdict on the grounds that there was no evidence to support the jury's finding that it breached any contract. Goldberger argues that Shipper Transportation Services was the party responsible for payment of the shipping charges to G & T and there was no evidence to suggest that Goldberger's payment of shipping charges to Shipper, rather than G & T, constituted a breach of contract. But Goldberger ignores the rule of law that, unless the bill of lading provides otherwise, the shipper remains primarily liable for shipping charges. *See Commercial Metals*, 456 U.S. at 343, 102 S.Ct. at 1820. The bills of lading at issue do not mention Shipper, nor state that anyone other than Goldberger is responsible for the shipping charges. Thus, Gold-

merce Act does not grant the shipper a cause of action to generally allege that the carrier did not charge the tariff rate.

**6.** Although Goldberger has appealed from the judgment and the denial of its posttrial motions, this court "may review any order affecting the order from which the appeal is taken and on appeal from a judgment may review any order involving the merits or affecting the judgment." Minn.R.Civ.App.P. 103.04. The order denying Goldberger's motion for a directed verdict falls

within this category and, in this case, is the more appropriate order to review.

**7.** At the time of the directed verdict motion, G & T also could have moved for dismissal without prejudice under Minn.R.Civ.P. 41.01(b). *Lampert Lumber Co. v. Joyce*, 405 N.W.2d 423, 426 (Minn.1987) (citation omitted). The trial having been completed on liability issues, this alternative course of action is not available to the trial court on remand.

berger remained primarily liable for the shipping charges and it breached the contract when G & T was not paid.

### DECISION

G & T having failed to present any evidence of its tariff, the trial court erred when it denied Goldberger's motion for a directed verdict. The case is remanded to the trial court to determine the most appropriate remedy for G & T's failure of proof, not inconsistent with this opinion. Other than the damage award, there is sufficient evidence to support the jury's findings, which are affirmed to the extent not nullified by a subsequent directed verdict.

**Affirmed in part, reversed in part, and remanded.**