STATE of Minnesota, Respondent,

v.

Henry Hyunchoon PAK, Appellant.

No. A09–1744.

Court of Appeals of Minnesota.

Aug. 24, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Jerome P. Filla, Jessica A. Johnson, Peterson, Fram & Bergman, St. Paul, MN, for respondent.

William J. Mauzy, Piper Kenney Webb, Casey T. Rundquist, The Law Offices of William J. Mauzy, Minneapolis, MN, for appellant.

Considered and decided by CONNOLLY, Presiding Judge; STONEBURNER, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges his assault and emergency-call-interference convictions, arguing that he was prejudiced at trial by evidentiary errors. The district court abused its discretion by excluding appellant's proffered character evidence, but we conclude that the error was harmless. We reject the balance of appellant's claims of error and therefore affirm.

## FACTS

Following an altercation between appellant Henry H. Pak and his wife H.E.P., respondent State of Minnesota charged appellant with: (I) interference with an emergency call in violation of Minn.Stat. § 609.78, subd. 2 (2008); (II) domestic assault with intent to cause fear of imminent bodily harm in violation of Minn.Stat. § 609.2242, subd. 1(1) (2008); (III) domestic assault with intent to inflict bodily harm in violation of Minn.Stat. § 609.2242, subd. 1(2) (2008); (IV) fifth-degree assault with intent to cause fear of imminent bodily harm in violation of Minn.Stat. § 609.224, subd. 1(1) (2008); (V) fifth-degree assault with intent to inflict bodily harm in violation of Minn.Stat. § 609.224, subd. 1(2) (2008); and (VI) disorderly conduct in violation of Minn.Stat. § 609.72, subd. 1(3) (2008).

Prior to trial, appellant's counsel informed the district court that he intended to call appellant's brother as a character witness for appellant. The following colloquy ensued:

THE COURT: Character witnesses are usually not admissible in criminal cases. I don't know [what] the purpose of character witnesses would be, his character is not in dispute, is it? Do you [the prosecutor] intend to offer evidence as to his character?

THE PROSECUTOR: I have no character evidence, Judge.

THE COURT: So—

DEFENSE COUNSEL: That's fine then.

THE COURT: Those witnesses are not appropriate, all right? Step off and we'll get the jury up here. . . .

Appellant's counsel did not ask to make an offer of proof about the specifics of appellant's brother's testimony, and the court proceeded immediately into jury selection.

The three witnesses at trial were H.E.P., appellant, and the Ramsey County sheriff's deputy who responded to the incident. H.E.P. and appellant offered broadly disparate accounts. H.E.P. testified that on the morning of April 17, 2009, she and appellant were in the kitchen and both

became upset while discussing plans for an 80th birthday party for appellant's mother. Appellant picked up a plastic bowl from the counter and smashed it into pieces and then approached H.E.P. with a "very angry and evil face" and a "very, very angry" tone of voice. H.E.P. picked up a nearby mobile phone and told appellant that if he didn't stop, she was going to call 911. Appellant grabbed the mobile phone away from H.E.P., and when she tried to pick up the portable phone in the kitchen, appellant grabbed that phone as well. Appellant then grabbed H.E.P. by the right wrist and pulled her out of the kitchen, down the hall, and into the laundry room. Appellant pushed H.E.P. against a door, put a hand to her neck, choked her, and yelled at her. When H.E.P. screamed because of the pain in her wrist, appellant let go of her. H.E.P. ran upstairs to use the phone in the guest bedroom. Appellant followed her, and when H.E.P. picked up the phone and dialed 911, appellant grabbed the phone away from her.

Soon afterward, the phone rang and appellant answered it, ran into another room, and locked the door behind him. The call was from 911 dispatch, and H.E.P. could hear appellant say that everything was okay. H.E.P. then told appellant she was going to drive to the police station, but appellant blocked her from getting her keys. At no time did appellant allow H.E.P. access to a phone or to her car keys.

When a Ramsey County sheriff's deputy arrived at the home, H.E.P. told the deputy that appellant had physically assaulted her by grabbing her wrist and choking her against the wall, had prevented her from calling 911, and had intercepted the call from 911. H.E.P. declined medical attention but later received a wrist brace from a doctor because her wrist was not getting better.

The deputy testified that when he arrived, H.E.P. seemed upset, was crying, and was holding her right arm. Appellant was standing nearby, holding three telephones. The deputy saw the shattered bowl in the kitchen and hair curlers on the floor of the kitchen and in the laundry room. As to injuries, the deputy testified, "I don't believe I saw any injuries, but you could see slight red marks to the neck, and I could not see anything on the wrist other than she was holding it very carefully." The deputy explained that he did not take any photographs of the red marks because they would not have shown up on the camera and the red marks were not necessarily indicative of an injury. In his report, the deputy noted that there were no apparent injuries and no photographs taken.

The deputy arrested appellant for interfering with a 911 call. The deputy asked H.E.P. to fill out a witness statement, and noticed that H.E.P. was visibly favoring her wrist while writing the statement. At trial, the prosecutor asked the deputy, "And did you reach any other conclusions about what happened that day?" The deputy replied, "That [H.E.P.] had been assaulted."

Appellant testified on his own behalf and his testimony contrasted sharply with H.E.P.'s. He testified that while he and H.E.P. were in the kitchen arguing about his mother's birthday, H.E.P. was screaming and he slammed the bowl on the counter to make a loud noise to get H.E.P. to stop screaming. He said that he did not intend to shatter the bowl. He denied preventing H.E.P. from calling 911, denied knowing that H.E.P. had called 911 until the dispatcher telephoned the house, denied assaulting H.E.P., and denied grabbing H.E.P.'s wrist, pulling her anywhere, twisting her arm, shoving or pushing her, dragging her into the laundry room, drag-

ging her to the door, shoving her against the wall or door, shaking her, choking her, or strangling her. He testified that H.E.P. had been complaining about pain in her wrist prior to the incident, that she plays piano and does a lot of computer work, and that both appellant and H.E.P.'s mother had previously suggested that H.E.P. see a doctor about her wrist. Appellant also testified that H.E.P. wears her curlers very loose, and "they fall out if she gets jostled." When the sheriff's deputy arrived, appellant denied that he had assaulted H.E.P. and said that he did not know that H.E.P. had called 911 until the call came in from dispatch.

The jury found appellant guilty on counts (I) interference with an emergency call, (III) domestic assault with intent to inflict bodily harm, and (V) fifth-degree assault with intent to inflict bodily harm, and not guilty on the remaining counts. The district court denied appellant's post-trial motion for a new trial or judgment of acquittal. This appeal follows.

## ISSUES

I. Did the district court commit reversible error by excluding appellant's proffered character evidence?

II. Did the district court commit reversible error by admitting the deputy's testimony that he formed an opinion at the crime scene that the victim had been assaulted?

III. Did the district court commit reversible error by denying appellant's post-trial motion for a new trial or judgment of acquittal because the state did not disclose that the deputy would testify that he observed red marks on H.E.P.'s neck?

## ANALYSIS

Appellant raises three evidentiary issues on appeal: the exclusion of his brother's character testimony, the allowance of the deputy's opinion testimony that H.E.P. "had been assaulted," and the allowance of the deputy's testimony that, at the scene, he observed red marks on H.E.P.'s neck.

## I

Appellant first argues that the district court erred by excluding his proffered character evidence from his brother. The state argues that appellant waived this argument by failing to preserve the issue at trial, and that even if the district court erred, the error was harmless.

## A

■ The state argues that appellant failed to preserve this issue for appeal because appellant's counsel "did not object to the exclusion" and "accepted the trial court's ruling regarding character witnesses stating '[t]hat's fine then.'" But a party whose evidence is excluded is not required to "object" to the court's ruling; instead, the correct procedure is to make an offer of proof regarding the substance of the excluded testimony. Minn. R. Evid. 103(a). The purpose of an offer of proof is to provide "the court with an opportunity to ascertain the admissibility of the proffered evidence" and to provide "a record for a reviewing court to determine whether the lower court ruling was correct." *Santiago v. State*, 644 N.W.2d 425, 442 (Minn. 2002).

But an offer of proof is not necessary where the substance of the excluded evidence is apparent from the context. Minn. R. Evid. 103(a)(2); Minn. R. Evid. 103(a) 1989 comm. cmt.; *see also State v. Harris*, 713 N.W.2d 844, 848–49 (Minn.2006) (noting that if substance of excluded evidence is apparent from context, appellate court can assess significance in absence of offer of proof and claim is preserved). Here, appellant acquiesced to the district court's

ruling without making an offer of proof, but the substance of the evidence is apparent from the context. Appellant intended to offer favorable evidence about his character through his brother. Given the context in which the testimony was offered and excluded, we conclude that appellant preserved the issue for appeal despite the lack of an express offer of proof.

## B

■■■■ Appellant argues that the district court erred by excluding his brother's testimony because such testimony is expressly allowed under the rules of evidence. "Evidentiary rulings are within the discretion of the district court and will not be overturned absent an abuse of that discretion." *State v. Jenkins*, 782 N.W.2d 211, 224 (Minn.2010). We will not reverse a district court's exclusion of defense character evidence if "our examination of the record satisfies us beyond a reasonable doubt" that the jury would not have acquitted even if it had the benefit of the defendant's character evidence. *State v. Posten*, 302 N.W.2d 638, 642 (Minn.1981).

■■■■ The general rule is that evidence of a person's character or a trait of character is not admissible to prove action in conformity therewith. Minn. R. Evid. 404(a). But an exception exists for criminal defendants: "Evidence of a pertinent trait of character offered by an accused" is admissible. Minn. R. Evid. 404(a)(1). "[T]his exception to the general rule excluding character evidence is 'so deeply imbedded in our jurisprudence as to assume almost constitutional proportions.'" *Posten*, 302 N.W.2d at 642 (quoting Fed.R.Evid. 404(a)(1) 1972 advisory comm. note).

Here, the district court excluded appellant's character evidence despite the plain language in rule 404(a)(1) that evidence of pertinent character traits is admissible from the accused. We conclude that the district court abused its discretion by excluding this evidence. But we will not reverse on the basis of this error, because our examination of the record satisfies us beyond a reasonable doubt that the jury would not have acquitted appellant even if it had the benefit of appellant's brother's testimony.

First, we conclude that the brother's testimony would not have had a significant impact on the jury. Had the brother testified, the district court would have properly limited his testimony to his personal opinion of appellant and his impression of appellant's reputation, and the court would not have permitted him to recount specific instances of conduct. *See* Minn. R. Evid. 405(a). Additionally, the court would have instructed the jury that in weighing the testimony, the jury could consider the witness's relationship to the defendant, interest in the outcome of the case, and "any other factors that bear on believability and weight." *See* 10 *Minnesota Practice*, CRIMJIG 3.12 (2006). We are persuaded beyond a reasonable doubt that the jury would have given little, if any, weight to the brother's testimony.

Second, we disagree with appellant's characterization that this was a close case that turned primarily on the jury's choice of believing appellant or H.E.P. In addition to the divergent testimony of appellant and H.E.P., the deputy testified about circumstantial evidence that included the parties' demeanor at the crime scene, their reactions upon his arrival at the home, H.E.P.'s curlers strewn about the house, the red marks on H.E.P.'s neck, H.E.P.'s favoring of her wrist, and the collection of phones in appellant's clutch.

We are satisfied beyond a reasonable doubt that the jury would not have acquitted appellant even if it had the benefit of appellant's brother's testimony. We

therefore conclude that the district court's erroneous exclusion of appellant's character-witness evidence does not support reversal.

## II

 Appellant next argues that the district court erred by admitting the deputy's testimony that he formed an opinion at the crime scene that H.E.P. "had been assaulted." We review the admission of the testimony for plain error because appellant did not object to this testimony at trial. *See* Minn. R.Crim. P. 31.02; *Jenkins*, 782 N.W.2d at 229. Plain-error analysis "involves four steps." *Jenkins*, 782 N.W.2d at 229. "First, we ask (1) whether there was error, (2) whether the error was plain, and (3) whether the error affected the defendant's substantial rights." *Id.* at 230. If we determine that these three steps have been met, we must assess whether we "should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.* (quotation omitted). "An error is plain if it is clear and obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010).

 Lay-witness testimony "in the form of opinion or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Minn. R. Evid. 701. A lay witness's opinion or inference testimony may help the jury by illustrating the witness's perception in a way that the mere recitation of objective observations cannot. *See Abar v. Ramsey Motor Serv., Inc.*, 195 Minn. 597, 599, 263 N.W. 917, 918 (1935) ("Words may fail to convey to the jury the actual situation as the witness saw it, but by expressing his opinion or conclusion as to the cause of the situation the jury may be able to comprehend what he saw.").

In *State v. Washington*, this court held admissible a 911 operator's testimony that she believed a woman on the phone was being assaulted because the testimony was rationally based on the operator's perceptions and was helpful to the jury. 725 N.W.2d 125, 137 (Minn.App.2006), *review denied* (Minn. Mar. 20, 2007). Appellant argues that *Washington* is distinguishable because the 911 operator was on the phone with the caller at the time of the perceived assault, whereas the deputy in this case arrived later. *See id.* at 130. We do not see a meaningful distinction. As in *Washington*, the deputy's testimony in this case was based on his rational perceptions and helped the jury to make a determination of the facts in issue by illustrating his observations of the parties and their home when he arrived on the scene. We conclude that the district court did not plainly err by admitting this evidence.

## III

 Appellant also argues that the state violated Minn. R.Crim. P. 9.01 by failing to disclose that the deputy would testify that he saw red marks on H.E.P.'s neck and that the court therefore erred by not granting appellant's post-trial motion for a new trial or judgment of acquittal. Appellant did not request a mistrial or object to the deputy's testimony about the red marks during trial. The plain-error standard of review therefore applies. *See* Minn. R.Crim. P. 31.02.

Rule 9.01 requires the state to "allow access ... to all matters within the prosecuting attorney's possession or control which relate to the case," and to disclose "any relevant written or recorded statements which relate to the case within the

possession or control of the prosecution, the existence of which is known by the prosecuting attorney," and "the substance of any oral statements which relate to the case." Minn. R.Crim. P. 9.01, subd. 1(2). The prosecutor's obligations under the rule extend to individuals "who have participated in the investigation or evaluation of the case" and who "have reported to the prosecuting attorney's office" with respect to the case. *Id.,* subd. 1(8). The state has "a continuing duty at all times before and during trial to supply the materials and information required by these rules." Minn. R.Crim. P. 9.03, subd. 2(b).

Here, the deputy testified that he observed slight red marks on H.E.P.'s neck at the parties' home, which he did not mention in his report or attempt to photograph. In response to appellant's post-trial motion, made orally as to this issue, the prosecutor informed the district court that the state did not know that the deputy had observed red marks on H.E.P.'s neck until he testified at trial. In its post-trial order memorandum, the district court said:

> The defendant was also troubled by the police officer's testimony that he observed marks or redness on the victim's neck because this information was not included in the officer's report. The defendant argues that because this fact was not made known prior to trial, the verdicts should be set aside.

> Officers' reports are not evidence and often do not contain every conceivable detail. Furthermore, the defense attorney was able to cross examine the officer, and pointed out that some of his testimony was not included in his report. The mere fact that the officer's testimony regarding the incident was more detailed than his report does not warrant vacation of the verdicts.

Appellant has the burden of showing plain error on appeal, *State v. Ramey,* 721 N.W.2d 294, 302 (Minn.2006), and, here, appellant points to nothing in the record that persuades us that the district court erred in its implicit finding that there was no prior statement that the prosecutor was required to disclose. Appellant has not met his burden to demonstrate error.

## DECISION

Because the district court's erroneous exclusion of appellant's proffered character evidence was harmless, and because appellant has not demonstrated that the district court plainly erred with respect to the deputy's testimony, we affirm.

**Affirmed.**